H. B. EDWARDS AND CORA L. EDWARDS v. J. E. ASHCRAFT ET AL.

(Filed 2 July, 1931.)

**1. Conspiracy A b—Evidence held not to establish conspiracy to defraud by inducing purchase of stock by misrepresentation.**

In an action against the directors of a corporation for conspiracy in procuring the purchase of stock by the plaintiff by false and fraudulent representations, evidence that a man entered the office of the secretary and demanded the right to inspect the books of the corporation, and that the secretary, not knowing the man's identity, "talked short" to him and refused the request, and that thereafter, at a discussion of the happening at the directors' meeting, a motion was made and passed to have the question of auditing the books submitted to the corporation's attorney: *Held*, the passage of the motion was not evidence of conspiracy of a director as to a purchase of stock by the plaintiff prior to the meeting, and the fact that the secretary refused the stranger's request to inspect the books is not evidence that the director was attempting to conceal the financial condition of the company.

**2. Same—Evidence of conspiracy to defraud by inducing purchase of stock by misrepresentations held insufficient.**

Where the directors of a corporation enter into an agreement that certain directors be permitted to buy a share of preferred stock for ten dollars and receive as a bonus eighty shares of common stock for each share of preferred, provided they bought the preferred stock in blocks aggregating the sum of five thousand dollars, such stock to be held by a trustee until the whole purchase price was paid, and that thereafter stock was sold to the plaintiff for ten dollars a share for preferred stock and two dollars and a half for common stock, and there is no evidence of the actual value of the stock: *Held*, the agreement is not evidence of a conspiracy to defraud the plaintiff by inducing him to purchase stock upon false representations, and in an action against a director, where there is no evidence that he was present, or knew of false representation made by the corporation's salesman in inducing the purchase of the stock, it is insufficient to be submitted to the jury on the issue of conspiracy to defraud, and the defendant's motion as of nonsuit should have been allowed.

**3. Same—Sufficiency of evidence of conspiracy to be submitted to the jury.**

While conspiracy may be proved by circumstantial evidence, the evidence must be sufficient to create more than a suspicion or conjecture in order to justify the submission of the issue to the jury.

CIVIL ACTION, before *Cowper, Special Judge,* at September Special Term, 1930, of UNION.

This cause was considered by the Court upon a former appeal reported in 196 N. C., at page 462, where the facts are fully set forth. In the former appeal it was held that the fraudulent representations, if any, made by a stock salesman in the absence of the defendants, direc-

tors, were not competent except upon the theory of conspiracy, and that the defendants were entitled to have an issue of conspiracy submitted to the jury.

Upon the present trial in the Superior Court the following issues were submitted:

1. "Did the defendants, Ashcraft, Cherry and Rhyne, or either of them, conspire with the salesmen who sold the stock to the plaintiff to defraud said plaintiff, as alleged in the complaint and the amendment thereto?"

2. "If so, which of said defendants entered into such conspiracy?"

3. "Was the plaintiff induced to subscribe and pay for stock in the Southern States Finance Company by reason of false and fraudulent representations made pursuant to such conspiracy, as alleged in the complaint and the amendment thereto?"

4. "What damage, if any, is the plaintiff entitled to recover?"

The jury answered the first issue "Yes"; the second issue, "Ashcraft, Cherry and Rhyne"; the third issue "Yes," and the fourth issue "$4,200 with interest at 4 per cent from 1 January, 1924."

From judgment upon the verdict the defendant, Rhyne, appealed, the other defendants not appealing.

*Vann & Milliken and H. B. Adams for plaintiffs.*
*Hartsell & Hartsell and Armfield, Sherrin & Barnhardt for defendants.*

BROGDEN, J. The case was tried upon the theory that the defendants, Ashcraft, Cherry and Rhyne, who were directors and officers of the bankrupt corporation, entered into a conspiracy to cheat and defraud the plaintiffs by means of fraudulent representations made by agents of the bankrupt corporation, inducing the sale of common and preferred stock to said plaintiffs. The defendant Rhyne appealed and asserts at the outset that no competent evidence was introduced tending to establish, as against him, a conspiracy to defraud. Hence, it becomes necessary to examine the items of evidence offered at the trial and relied upon in this Court as sufficient to be submitted to the jury upon the issue of conspiracy.

The first item of evidence offered against the defendant Rhyne was to the effect that, at a meeting of the directors on 10 May, 1924, at which Ashcraft, Rhyne and Cherry were present, Cherry, who was secretary of the company, "made a verbal report to the board with reference to an order or citation that had been made on him that the books of the company be turned over to the courts for an audit to be made." Over the objection of Rhyne the statement of Cherry at the

meeting was offered in evidence, such statement being as follows: "Mr. Cherry stated that a man came into his office and took him rather unawares; I think he said who it was, but I don't recall; that he came in a rather officious manner and demanded to see his books; that he, Cherry, on the spur of the moment, didn't know what the fellow wanted, and talked rather short to him, and probably refused to let him see his books, and the man went out. That report was followed by a discussion on the part of the directors in regard to it. Witness testified: "I have no recollection in regard to whether or not Mr. Rhyne participated in that discussion. A motion was made that the matter be referred to the corporation's counsel by Mr. Rhyne. My recollection is that the motion made by Mr. Rhyne was put to a vote and carried."

The plaintiff purchased stock on 9 November, 1922; 16 November, 1922; 19 April, 1923, and 6 November, 1923. It is therefore apparent that the fact that Mr. Rhyne made a motion in 1924, to submit the question of having the books audited to the attorney for the corporation in nowise tended to show the existence of a conspiracy to cheat and defraud in 1922, at the time the plaintiffs made the first purchase of stock. Moreover, the fact that Cherry, the secretary of the company, "talked short" to a stranger whose identity he did not know, did not tend to establish the fact that Rhyne was attempting to conceal the financial condition of the company.

The second item of evidence offered upon the issue of conspiracy is gathered from the minutes of the meeting of the directors, held on 10 July, 1922. The defendants, Ashcraft, Cherry and Rhyne, were present at this meeting. The minutes show the following: "Mr. Cherry made a motion, which was seconded by Mr. Rhyne, that the duly authorized officers be ordered to issue this stock and set it aside in some manner in keeping with the usual forms and customs practiced, for delivery to the respective officers, directors and salesmen, after, and only after, the conditions under which this stock was sold to them have been fulfilled and complied with."

The scheme proposed by the directors was set out in the minutes of the meeting held on 3 April, 1922, at which meeting the defendant, Rhyne, was elected vice-president of the company. The minutes of the meeting of 3 April, 1922, do not show that Rhyne was present at the meeting at which he was elected vice-president. However, they do show that "President Ashcraft announced that certain men of influence in their respective communities and regarded as having marked business ability, had purchased the first stock sold by the company, these men agreed to purchase this first stock in blocks of not less than $5,000 in amount, for the purpose of making the organization possible from a monetary standpoint, and they further agreed to take the affairs of the

company in charge as officers and to serve on its board of directors, both without salary, until such time as the stockholders chose to elect successors to them, and in consideration therefor, these certain men were sold their stock on a basis of one share of the preferred and 80 shares of the nonpar-value common for a total price of $10.00." President Ashcraft also announced that we had with us certain salesmen whose loyalty to the company and persistence of efforts in trying to sell our stock had played an important part in the progress made by the company up to this time, and that these salesmen's services were needed further to put the company over, and that he would recommend that these certain salesmen be permitted, under certain conditions, to purchase stock from the company on the same basis that the officers and directors above mentioned had, in amounts, however, up to, but not to exceed $5,000. At this juncture Mr. Payne made a motion which was seconded by Mr. Jenkins, that the board of directors be authorized at such time and in such manner as is found just and proper, to order this stock, especially the common, set aside by the duly authorized officers for delivery to the above mentioned officers, directors and salesmen upon the fulfillment of the certain conditions mentioned herein. Upon being put to a vote, all present voted in the affirmative, whereupon the president declared the motion carried."

Thereafter, at a meeting held on 10 July, 1922, at which meeting Rhyne was present, a resolution was duly passed in the following words: "That we change the basis of sale of our stock from $10 per share for the preferred, and giving with it one share of the common as a bonus, to $10 per share for the preferred and $2.50 per share for the common, and that the stock be sold in units of 3, one preferred and two of the common for a total price of $15 per unit." Another excerpt from the minutes is as follows: "We have executed an agreement between the company and certain individuals whereby 798,730 shares of the common stock of the company are to be set aside in the hands of H. S. Bryant, trustee, for the trustee to distribute to these individuals who purchase on a basis of 80 shares of common and one of preferred for $10, and under the terms of the agreement, certificates not to be issued to individual until after the total allotted to each individual has been fully paid in."

The so-called Bryant agreement is not in the record, and, therefore, it is impossible to state the terms of the agreement except as explained by the witness.

The foregoing excerpts from the minutes tend to show this situation: The defendants, Ashcraft, Cherry and Rhyne, together with the other directors of the company, entered into an agreement that certain directors should not be permitted and allowed to buy a share of preferred

stock for $10 and receive in addition as a bonus 80 shares of common stock for each share of preferred, provided they purchased preferred stock in blocks aggregating the sum of $5,000, such bonus stock to be placed in the hands of Bryant, trustee, and held by him until the whole purchase price was paid. Thereafter, the preferred stock was sold to the plaintiff at $10 per share, but the common stock was sold at $2.50 per share. There is no evidence in the record as to the actual or market value of either the preferred or common stock at the time of the sale to the plaintiffs.

. Therefore, the question is whether the fact that director Rhyne got 80 shares of common for each share of preferred provided he bought $5,000 worth, and that plaintiff was required to pay the same price for the preferred and $2.50 per share for the common was evidence of a conspiracy on the part of Rhyne to cheat and defraud the plaintiffs by false representations made by agents of the company as to the value of the stock. The court is constrained to answer this question in the negative.

There is no evidence that Rhyne was present when the stock salesmen made fraudulent representations to the plaintiffs or any one else, or that he ever knew that such fraudulent representations were made. While conspiracy may be proved by circumstantial evidence, yet such evidence must be sufficient to create more than a suspicion or conjecture. *Swann v. Martin,* 191 N. C., 404; *S. v. Wrenn,* 198 N. C., 260.

Upon the whole record the Court is of the opinion that the purported evidence of conspiracy was not of sufficient probative value to be submitted to the jury as against Rhyne, and his motion for nonsuit should have been allowed.

Reversed.