JAMES ROBERT DICKENS v. EARL V. PURYEAR AND ANN BREWER PURYEAR

No. 86

(Filed 7 April 1981)

**1. Rules of Civil Procedure §§ 8, 56— motion for summary judgment before responsive pleading filed — raising of affirmative defense proper**

A party whose responsive pleading is not yet due may by motion for summary judgment and in support of the motion raise an affirmative defense to an asserted claim before the party pleads responsively to the claim.

**2. Rules of Civil Procedure § 56— summary judgment motion — failure to refer to affirmative defense**

If an affirmative defense required to be raised by a responsive pleading is sought to be raised for the first time in a motion for summary judgment, the motion must ordinarily refer expressly to the affirmative defense relied upon; however, defendants' failure to refer to the affirmative defense of the statute of limitations was not a bar to consideration of the defense on defendants' motion for summary judgment, since plaintiff was not surprised by the limitations defense and had full opportunity to argue and present evidence relevant to the limitations question, and plaintiff's complaint was cast in terms of the tort of intentional infliction of mental distress rather than assault and battery, thus demonstrating plaintiff's awareness that the statute of limitations was going to be an issue.

**3. Assault and Battery § 1— elements of assault and battery**

An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow; damages recoverable for assault and battery include those for plaintiff's mental disturbance as well as for plaintiff's physical injury.

**4. Trespass § 2— intentional infliction of mental distress — elements**

The tort of intentional infliction of mental distress, recognized in N. C., consists of extreme and outrageous conduct which is intended to cause and does cause severe emotional distress to another.

**5. Trespass § 2— intentional infliction of mental distress — summary judgment for defendant improper**

In plaintiff's action to recover for the intentional infliction of mental distress, the trial court erred in entering summary judgment for the male defendant where the evidence tended to show that plaintiff suffered assault and battery at the hands of defendant and others; defendant threatened plaintiff with death in the future unless plaintiff went home, pulled his telephone off the wall, packed his clothes, and left the state; such threat was not one of imminent or immediate harm, but was a threat for the future apparently intended to and which allegedly did inflict serious mental distress; and although plaintiff's recovery for injury, mental or physical, directly caused by the assaults and batteries was barred by

the statute of limitations, these assaults and batteries could be considered in determining the outrageous character of the ultimate threat and the extent of plaintiff's mental or emotional distress caused by it.

**6. Conspiracy § 2.1— conspiracy intentionally to inflict mental distress — insufficiency of evidence** .

In plaintiff's action to recover for intentional infliction of mental distress where plaintiff alleged that the female defendant conspired to commit the tort, summary judgment for the female defendant was proper where the evidence tended to show only that the male defendant was present when plaintiff arrived at the scene of the alleged tort; upon command of the male defendant, she emerged from a nearby building and stated her desire not to see plaintiff; the female defendant drove off with her daughter before the commission of the assaults and batteries and the alleged intentional infliction of mental distress; and plaintiff's evidentiary showing was therefore insufficient to indicate that at trial he might be able to prove an agreement between the two defendants intentionally to inflict mental distress upon him.

Justice MEYER did not participate in the consideration and decision of this case.

*Judge Braswell* presiding at the 28 March 1978 Non-Jury Session of WAKE Superior Court granted defendants' motions for summary judgment. On 18 March 1980 the Court of Appeals, in an opinion by *Judge Vaughn* with *Chief Judge Morris* and *Judge Arnold* concurring, affirmed. 45 N.C. App. 696, 263 S.E. 2d 856 (1980). We allowed plaintiff's petition for discretionary review on 3 June 1980. This case was docketed and argued as No. 42, Fall Term 1980.

*Ransdell, Ransdell & Cline, by William G. Ransdell, Jr., Phillip C. Ransdell, and James E. Cline, Attorneys for plaintiff appellant.*

*Ragsdale & Liggett, by George R. Ragsdale and Peter M. Foley, Attorneys for defendant appellee Earl V. Puryear.*

*Manning, Fulton & Skinner, by Howard E. Manning and Michael T. Medford, Attorneys for defendant appellee Ann Brewer Puryear.*

EXUM, Justice.

Plaintiff's complaint is cast as a claim for intentional infliction of mental distress. It was filed more than one year but less than three years after the incidents complained of occurred. Defendants moved for summary judgment before answer was due or filed. Much of the factual showing at the hearing on summary judgment

Dickens v. Puryear

related to assaults and batteries committed against plaintiff by defendants. Defendants' motions for summary judgment were allowed on the ground that plaintiff's claim was for assault and battery; therefore it was barred by the one-year statute of limitations applicable to assault and battery. G.S. 1-54(3).

Thus this appeal raises two questions. First, whether defendants, by filing motions for summary judgment before answer was due or filed, properly raised the affirmative defense of the statute of limitations. Second, whether plaintiff's claim is barred by the one-year statute of limitations applicable to assault and battery. We hold that defendants properly raised the limitations defense but that on its merits plaintiff's claim is not altogether barred by the one-year statute because plaintiff's factual showing indicates plaintiff may be able to prove a claim for intentional infliction of mental distress — a claim which is governed by the three-year statute of limitations. G.S. 1-52(5). We further hold that summary judgment was, nevertheless, appropriately entered as to the *femme* defendant inasmuch as plaintiff has made no showing sufficient to indicate he will be able to prove a claim against her.

The facts brought out at the hearing on summary judgment may be briefly summarized: For a time preceding the incidents in question plaintiff Dickens, a thirty-one year old man, shared sex, alcohol and marijuana with defendant's daughter, a seventeen year old high school student. On 2 April 1975 defendants, husband and wife, lured plaintiff into rural Johnston County, North Carolina. Upon plaintiff's arrival defendant Earl Puryear, after identifying himself, called out to defendant Ann Puryear who emerged from beside a nearby building and, crying, stated that she "didn't want to see that SOB." Ann Puryear then left the scene. Thereafter Earl Puryear pointed a pistol between plaintiff's eyes and shouted "Ya'll come on out." Four men wearing ski masks and armed with nightsticks then approached from behind plaintiff and beat him into semi-consciousness. They handcuffed plaintiff to a piece of farm machinery and resumed striking him with nightsticks. Defendant Earl Puryear, while brandishing a knife and cutting plaintiff's hair, threatened plaintiff with castration. During four or five interruptions of the beatings defendant Earl Puryear and the others, within plaintiff's hearing, discussed and took votes on whether plaintiff should be killed or castrated. Finally, after some two hours and the conclusion of a final conference, the beatings ceased.

Dickens v. Puryear

Defendant Earl Puryear told plaintiff to go home, pull his telephone off the wall, pack his clothes, and leave the state of North Carolina; otherwise he would be killed. Plaintiff was then set free.[1]

Plaintiff filed his complaint on 31 March 1978. It alleges that defendants on the occasion just described intentionally inflicted mental distress upon him. He further alleges that as a result of defendants' acts plaintiff has suffered "severe and permanent mental and emotional distress, and physical injury to his nerves and nervous system." He alleges that he is unable to sleep, afraid to go out in the dark, afraid to meet strangers, afraid he may be killed, suffering from chronic diarrhea and a gum disorder, unable effectively to perform his job, and that he has lost $1000 per month income.

On 28 April 1978 Judge Preston by order extended the time in which defendants would be required to file responsive pleadings or motions until twenty days after the Court of Appeals decided a case then pending before that court.[2] Defendants, acting pursuant to this order, filed no answer. On 7 September and 15 November 1978 defendants filed, respectively, motions for summary judgment. The motions made no reference to the statute of limitations nor did they contest plaintiff's factual allegations. Judge Braswell, after considering arguments of counsel, plaintiff's complaint, plaintiff's deposition and evidence in the criminal case arising out of this occurrence,[3] concluded that plaintiff's claim was barred by G.S. 1-54(3), the one-year statute of limitations applicable to assault and battery. On 29 March 1979 he granted summary judgment in favor of both defendants.

## I.

We first address plaintiff's contention that defendants' motions

---

[1] This same occurrence gave rise to a criminal conviction of defendant Earl Puryear for conspiracy to commit simple assault. *See State v. Puryear*, 30 N.C. App. 719, 228 S.E. 2d 536, *appeal dismissed*, 291 N.C. 325, 230 S.E. 2d 678 (1976).

[2] The order provided, in pertinent part: "Defendants are allowed until twenty (20) days following the filing of a decision by the North Carolina Court of Appeals in *Byrd v. Hodges*, 77 CVS 4422, Wake County, which case is presently on appeal to that Court, to file responsive pleadings or motions herein."

[3] *See* n. 1, *supra*.

for summary judgment were procedurally defective. Plaintiff argues initially that defendants' failure to file answer was fatal, procedurally, to the trial court's allowing the motions on statute of limitations grounds. We disagree.

On the question of whether an affirmative defense can be first raised, in the absence of an answer, by a motion for summary judgment, there is an apparent tension between Rules of Civil Procedure 8(c) and 56. Rule 8(c) requires a party to set forth in a responsive pleading "any . . . matter constituting an avoidance or affirmative defense" including, among other numerous affirmative defenses, the statute of limitations.[4] Rule 56, on the other hand, provides that a defending party "may, *at any time,* move with or without supporting affidavits for a summary judgment . . . ."[5] (Emphasis supplied). Rule 56(c) provides, further, that summary judgment shall be rendered "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

Whatever tension there is between these two rules has been consistently resolved by the federal courts in favor of permitting a party to ground a motion for summary judgment upon an affirmative defense about which there is no genuine factual issue even though the party has filed no answer.[6] Moore summarizes the problem and the solution in 2A Moore's Federal Practice ¶ 8.28 (2d ed. 1980):

"Rule 8(c) might seem to imply that affirmative defens-

---

[4] Rule 8(c) provides in pertinent part:

"*In pleading to a preceding pleading, a party shall set forth affirmatively . . . statute of limitations . . .* and any other matter constituting an avoidance or affirmative defense. Such pleading shall contain a short and plain statement of any matter constituting an avoidance or affirmative defense sufficiently particular to give the court and the parties notice of the transactions, occurences, or series of transactions or occurrences, intended to be proved." (Emphasis supplied.)

[5] Rule 56(b) provides:

"(b) *For defending party.—* A party against whom a claim, counterclaim or crossclaim is asserted or a declaratory judgment is sought, may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

[6] These cases include *Funding Systems Leasing Corp. v. Pugh,* 530 F. 2d 91 (5th Cir. 1976); *Connelly Foundation v. School District of Haverford Township,*

es may be raised only by a pleading (where one is required or permitted) and not otherwise. This, however, is too narrow a construction of the rule. A defendant may move for summary judgment under Rule 56 where 'there is no genuine issue as to any material fact' and he 'is entitled to judgment as a matter of law'; and *it is clear that summary judgment is proper where the defendant shows the existence of an affirmative defense even though he has filed no answer."* (Emphasis supplied.)

Inasmuch as our rules are drawn from the federal rules it is customary for this Court to look for guidance in interpreting our rules to federal rules decisions. *Dendy v. Watkins,* 288 N.C. 447, 219 S.E. 2d 214 (1975); *Brewer v. Harris,* 279 N.C. 288, 182 S.E. 2d 345 (1971). There are, moreover, two North Carolina cases which support our conclusion here. Although distinguishable, both *Bank v. Gillespie,* 291 N.C. 303, 230 S.E. 2d 375 (1976), and *Cooke v. Cooke,* 34 N.C. App. 124, 237 S.E. 2d 323 (1977), held that unpleaded affirmative defenses raised by evidence adduced at the hearing could be considered *in opposition to* a motion for summary judgment.

**[1]**  We agree with the federal decisions and the position taken by Moore. We hold that a party whose responsive pleading is not yet due may by motion for summary judgment and in support of the motion raise an affirmative defense to an asserted claim before the party pleads responsively to the claim.

**[2]**  Plaintiff next argues that failure of defendants' motions for summary judgment to refer expressly to the statute of limitations was fatal to defendants' ability to urge the statute as a ground for

---

461 F. 2d 495 (3rd Cir. 1972); *Suckow Borax Mines Consol., Inc. v. Borax Consol., Ltd.,* 185 F. 2d 196 (9th Cir. 1950) (statute of limitations); *Gifford v. Travelers Protective Assn.,* 153 F. 2d 209 (9th Cir. 1946) (statute of limitations); *Kithcart v. Metropolitan Life Ins. Co.,* 150 F. 2d 997 (8th Cir. 1945) (statute of limitations); *Cordaro v. Lusardi,* 354 F. Supp. 1147 (S.D.N.Y. 1971); *Schetter v. United States,* 136 F. Supp. 931 (W.D. Penn. 1956). *See also Diaz-Buxo v. Trias Monge,* 593 F. 2d 153 (1st Cir. 1979); *Lambert v. Conrad,* 536 F. 2d 1183 (7th Cir. 1976); *Thomas v. Consolidation Coal Co.,* 380 F. 2d 69 (4th Cir. 1967), *cert. denied,* 389 U.S. 1004 (1967), *reh. denied,* 389 U.S. 1059 (1968); *Williams v. Murdoch,* 330 F. 2d 745 (3rd Cir. 1964). *See generally* 2A Moore's Federal Practice ¶ 8.28 (2d ed. 1980); 6 Moore's Federal Practice ¶¶ 56.17[4], 56.17[58] (2d ed. 1980).

allowing their motions. Under the circumstances here we disagree. Although Rule 7(b)(1) requires that motions generally "shall state the grounds therefor," Rule 56 "does not require any grounds be stated in a motion for summary judgment." *Conover v. Newton*, 297 N.C. 506, 513, 256 S.E. 2d 216, 221 (1979). We held in *Conover* that a ground other than that stated in the motion for summary judgment may be the basis for allowing it; we noted, however, that the ground not expressly mentioned was "clearly within the issue raised by [the] motion." *Id.* The federal courts have consistently held likewise.[7]

Nevertheless, if an affirmative defense required to be raised by a responsive pleading is sought to be raised for the first time in a motion for summary judgment, the motion must ordinarily refer expressly to the affirmative defense relied upon. Only in exceptional circumstances where the party opposing the motion has not been surprised and has had full opportunity to argue and present evidence will movant's failure expressly to refer to the affirmative defense not be a bar to its consideration on summary judgment.

Here plaintiff was not surprised by the limitations defense and had full opportunity to argue and present evidence relevant to the limitations questions. Plaintiff's complaint is cast in terms of the tort of intentional infliction of mental distress rather than assault and battery. This demonstrates plaintiff's awareness that the statute of limitations was going to be an issue. Plaintiff did present evidence and briefs on the question before Judge Braswell. Thus, as the Court of Appeals said, "this affirmative defense was clearly before the trial court." Therefore defendants' failure expressly to mention this defense in their motions will not be held to bar the court's granting the motions on the limitations ground.

## II.

We turn now to the merits of defendants' motions for summary judgment. Defendants contend, and the Court of Appeals agreed, that this is an action grounded in assault and battery. Although

---

[7] *See, e.g., Broderick Wood Prods. Co. v. United States*, 195 F. 2d 433 (10th Cir. 1952); *Board of Nat'l Missions of Presbyterian Church v. Smith*, 182 F. 2d 362 (7th Cir. 1950); *Wisnouse v. Telsey*, 367 F. Supp. 855 (S.D.N.Y. 1973). *See generally* 6 Moore's Federal Practice ¶ 56.14[1] (2d ed. 1976); 10 C. Wright and A. Miller, Federal Practice and Procedure § 2719 (1973); 5 C. Wright and A. Miller, Federal Practice and Procedure §§ 1191-1193 (1969).

plaintiff pleads the tort of intentional infliction of mental distress, the Court of Appeals concluded that the complaint's factual allegations and the factual showing at the hearing on summary judgment support only a claim for assault and battery. The claim was, therefore, barred by the one-year period of limitations applicable to assault and battery. Plaintiff, on the other hand, argues that the factual showing on the motion supports a claim for intentional infliction of mental distress — a claim which is governed by the three-year period of limitations.[8] At least, plaintiff argues, his factual showing is such that it cannot be said as a matter of law that he will be unable to prove such a claim at trial. We agree with plaintiff's position.

To resolve the question whether defendants are entitled to summary judgment on the ground of the statute of limitations we must examine both the law applicable to the entry of summary judgment and the law applicable to the torts of assault and battery and intentional infliction of mental distress. We think it better to begin with a discussion of applicable tort law.

A.

[3] North Carolina follows common law principles governing assault and battery. An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow. *Hayes v. Lancaster*, 200

---

[8] Although defendants argue that even the tort of intentional infliction of mental distress is governed by the one-year statute of limitations, we are satisfied that it is not. The one-year statute, G.S. 1-54(3), applies to "libel, slander, assault, battery, or false imprisonment." As we go to some length in the opinion to demonstrate, the tort of intentional infliction of mental distress is none of these things. Thus the rule of statutory construction embodied in the maxim, *expressio unius est exclusio alterius*, meaning the expression of one thing is the exclusion of another, applies. *See* Appeal of Blue Bird Taxi Co., 237 N.C. 373, 75 S.E. 2d 156 (1953). No statute of limitations addresses the tort of intentional infliction of mental distress by name. It must, therefore, be governed by the more general three-year statute of limitations, G.S. 1-52(5), which applies to "any other injury to the person or rights of another, not arising on contract and not hereafter enumerated." Even if we had substantial doubt about which statute of limitations applies, and we do not, the rule would be that the longer statute is to be selected. *See, e.g., Payne v. Ostrus*, 50 F. 2d 1039 (8th Cir. 1931); *Matthews v. Travelers Indemnity Ins. Co.*, 245 Ark. 247, 432 S.W. 2d 485 (1968); *Scovill v. Johnson*, 190 S.C. 457, 3 S.E. 2d 543 (1939); *Shew v. Coon Bay Loafers, Inc.*, 76 Wash. 2d 40, 455 P. 2d 359 (1969); *see generally* 51 Am. Jur. 2d *Limitation of Actions* § 63 (1970).

Dickens v. Puryear

N.C. 293, 156 S.E. 530 (1931); *Ormond v. Crampton,* 16 N.C. App. 88, 191 S.E. 2d 405, *cert. denied,* 282 N.C. 304, 192 S.E. 2d 194 (1972). The interest protected by the action for battery is freedom from intentional and unpermitted contact with one's person; the interest protected by the action for assault is freedom from apprehension of a harmful or offensive contact with one's person. *McCracken v. Sloan,* 40 N.C. App. 214, 252 S.E. 2d 250 (1979); *see also* Prosser, Law of Torts §§ 9, 10 (4th ed. 1971) (hereinafter "Prosser"). The apprehension created must be one of an immediate harmful or offensive contact, as distinguished from contact in the future. As noted in *State v. Ingram,* 237 N.C. 197, 201, 74 S.E. 2d 532, 535 (1953), in order to constitute an assault there must be:

> "[A]n overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some *immediate* physical injury to the person of another . . . .
>
> . . . .
>
> "The display of force or menace of violence must be such to cause the reasonable apprehension of *immediate* bodily harm. *Dahlin v. Fraser,* 206 Minn. 476." (Emphasis supplied.)

*See also State v. Roberts,* 270 N.C. 655, 155 S.E. 2d 303 (1967); *State v. Johnson,* 264 N.C. 598, 142 S.E. 2d 151 (1965).

A mere threat, unaccompanied by an offer or attempt to show violence, is not an assault. *State v. Daniel,* 136 N.C. 571, 48 S.E. 544 (1904); *State v. Milsaps,* 82 N.C. 549 (1880). The damages recoverable for assault and battery include those for plaintiff's mental disturbance as well as for plaintiff's physical injury. *Trogdon v. Terry,* 172 N.C. 540, 90 S.E. 583 (1916); *Hodges v. Hall,* 172 N.C. 29, 89 S.E. 802 (1916); *Bedsole v. Atlantic Coast Line R.R. Co.,* 151 N.C. 152, 65 S.E. 925 (1909).

Common law principles of assault and battery as enunciated in North Carolina law are also found in the Restatement (Second) of Torts (1965) (hereinafter "the Restatement"). As noted in § 29(1) of the Restatement, "[t]o make the actor liable for an assault he must put the other in apprehension of an *imminent* contact." (Emphasis supplied.) The comment to § 29(1) states: "The apprehension created must be one of imminent contact, as distinguished from any contact in the future. 'Imminent' does not mean immediate, in the

sense of instantaneous contact . . . . It means rather that there will be no significant delay." Similarly, § 31 of the Restatement provides that "[w]ords do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an *imminent* harmful or offensive contact with his person." (Emphasis supplied.) The comment to § 31 provides, in pertinent part:

> "a. Ordinarily mere words, unaccompanied by some act apparently intended to carry the threat into execution, do not put the other in apprehension of an imminent bodily contact, and so cannot make the actor liable for an assault under the rule stated in § 21 [the section which defines an assault]. For this reason *it is commonly said in the decisions that mere words do not constitute an assault,* or that some overt act is required. *This is true even though the mental discomfort caused by a threat of serious future harm on the part of one who has the apparent intention and ability to carry out his threat may be far more emotionally disturbing than many of the attempts to inflict minor bodily contacts which are actionable as assaults. Any remedy for words which are abusive or insulting, or which create emotional distress by threats for the future, is to be found under §§ 46 and 47 [those sections dealing with the interest in freedom from emotional distress].*

Illustration:

> 1. A, known to be a resolute and desperate character, *threatens to waylay B on his way home on a lonely road on a dark night. A is not liable to B for an assault* under the rule stated in § 21. *A may, however, be liable to B for the infliction of severe emotional distress by extreme and outrageous conduct,* under the rule stated in § 46." (Emphasis supplied.)

Again, as noted by Prosser, § 10, p. 40, "[t]hreats for the future . . . are simply not present breaches of the peace, and so never have fallen within the narrow boundaries of [assault]." Thus threats for the future are actionable, if at all, not as assaults but as intentional inflictions of mental distress.

The tort of intentional infliction of mental distress is recog-

Dickens v. Puryear

nized in North Carolina. *Stanback v. Stanback*, 297 N.C. 181, 254 S.E. 2d 611 (1979). "[L]iability arises under this tort when a defendant's 'conduct exceeds all bounds usually tolerated by decent society' and the conduct 'causes mental distress of a very serious kind.'" *Id.* at 196, 254 S.E. 2d at 622, *quoting* Prosser, § 12, p. 56. In *Stanback* plaintiff alleged that defendant breached a separation agreement between the parties. She further alleged, according to our opinion in *Stanback*, "that defendant's conduct in breaching the contract was 'wilful, malicious, calculated, deliberate and purposeful' . . . . [and] that 'she has suffered great mental anguish and anxiety . . .' as a result of defendant's conduct in breaching the agreement . . . . [and] that defendant acted recklessly and irresponsibly and 'with full knowledge of the consequences which would result . . . .'" *Id.* at 198, 254 S.E. 2d at 622-23. We held in *Stanback* that these allegations were "sufficient to state a claim for what has become essentially the tort of intentional infliction of serious emotional distress. Plaintiff has alleged that defendant intentionally inflicted mental distress." *Id.* at 196, 254 S.E. 2d at 621-22.

The tort alluded to in *Stanback* is defined in the Restatement § 46 as follows:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

The *holding* in *Stanback* was in accord with the Restatement definition of the tort of intentional infliction of mental distress. We now reaffirm this holding.

There is, however, troublesome *dictum* in *Stanback* that plaintiff, to recover for this tort, "must show some physical injury resulting from the emotional disturbance caused by defendant's alleged conduct" and that the harm she suffered was a "foreseeable result." *Id.* at 198, 254 S.E. 2d at 623. Plaintiff in *Stanback* did not allege that she had suffered any physical injury as a result of defendant's conduct. We noted in *Stanback*, however, that "physical injury" had been given a broad interpretation in some of our earlier cases, *e.g.*, *Kimberly v. Howland*, 143 N.C. 398, 403-04, 55 S.E. 778, 780 (1906), where the Court said,

"The nerves are as much a part of the physical system as

> the limbs, and in some persons are very delicately adjust-
> ed, and when 'out of tune' cause excruciating agony. We
> think the general principles of the law of torts support a
> right of action for physical injuries resulting from negli-
> gence, whether wilful or otherwise, none the less strong-
> ly because the physical injury consists of a wrecked nerv-
> ous system instead of lacerated limbs."

We held in *Stanback* that plaintiff's "allegation that she suffered great mental anguish and anxiety is sufficient to permit her to go to trial upon the question of whether the great mental anguish and anxiety (which she alleges) has caused physical injury." *Stanback v. Stanback, supra,* 297 N.C. at 199, 254 S.E. 2d at 623. We held, further, that plaintiff's allegation that "defendant acted with full knowledge of the consequences of his actions . . . sufficiently indicated that the harm she suffered was a foreseeable result of his conduct." *Id.* at 198, 254 S.E. 2d at 623.

After revisiting *Stanback* in light of the earlier authorities upon which it is based and considering an instructive analysis of our cases in the area by Professor and former Dean of the University of North Carolina Law School, Robert G. Byrd,[9] we are satisfied that the *dictum* in *Stanback* was not necessary to the holding and in some respects actually conflicts with the holding. We now disapprove it.

If "physical injury" means something more than emotional distress or damage to the nervous system, it is simply not an element of the tort of intentional infliction of mental distress. As noted, plaintiff in *Stanback* never alleged that she had suffered any physical injury, yet we held that she had stated a claim for intentional infliction of mental distress. In *Wilson v. Wilkins,* 181 Ark. 137, 25 S.W. 2d 428 (1930), defendants came to the home of the plaintiff at night and accused him of stealing hogs. They told him that if he did not leave their community within 10 days they "would put a rope around his neck." Defendants' threats caused the plaintiff to remove his family from the area. Plaintiff testified that he was afraid they would kill him if he did not leave and that he suffered great mental agony and humiliation because he had been accused of

---

[9] *See generally* Byrd, *Recovery for Mental Anguish in North Carolina,* 58 N.C. L. Rev. 435 (1980).

something of which he was not guilty. In sustaining a jury verdict in favor of plaintiff, the Arkansas Supreme Court rejected defendants' contention that plaintiff was required to show some physical injury before he could recover. The Court said, 181 Ark. 139, 25 S.W. 2d at 428:

> "The [defendants] rely upon the rule . . . that in actions for negligence there can be no mental suffering where there has been no physical injury.
>
> "The rule is well settled in this state, but it has no application to willful and wanton wrongs and those committed with the intention of causing mental distress and injured feelings. Mental suffering forms the proper element of damages in actions for willful and wanton wrongs and those committed with the intention of causing mental distress."

Similarly, the question of foreseeability does not arise in the tort of intentional infliction of mental distress. This tort imports an act which is done with the intention of causing emotional distress or with reckless indifference to the likelihood that emotional distress may result. A defendant is liable for this tort when he "desires to inflict severe emotional distress . . . [or] knows that such distress is certain, or substantially certain, to result from his conduct . . . [or] where he acts recklessly . . . in deliberate disregard of a high degree of probability that the emotial distress will follow" and the mental distress does in fact result. Restatement § 46, Comment *i*, p. 77. "The authorities seem to agree that if the tort is wilful and not merely negligent, the wrong-doer is liable for such physical injuries as may proximately result, whether he could have foreseen them or not." *Kimberly v. Howland, supra,* 143 N.C. at 402, 55 S.E. at 780.

We are now satisfied that the *dictum* in *Stanback* arose from our effort to conform the opinion to *language* in some of our earlier cases the *holdings* of which led ultimately to our recognition in *Stanback* of tort of intentional infliction of mental distress.

The earliest of these cases is *Kirby v. Jules Chain Stores Corp.,* 210 N.C. 808, 188 S.E. 625 (1936). This case involved a bill collector who used highhanded collection tactics against plaintiff debtor. In an effort to collect the debt defendant said to plaintiff, "By G—, you are like all the rest of the damn deadbeats. You wouldn't pay when you could . . . . If you are so damn low you won't pay, I guess when I

get the sheriff and bring him down here you will pay then." Plaintiff, who was pregnant, became emotionally distraught and her evidence tended to show that her distress caused her child to be prematurely stillborn. This Court sustained a verdict and judgment for the plaintiff. The Court recognized that earlier cases permitting recovery under such circumstances required that there be a forcible trespass. Without deciding whether a forcible trespass existed in the case before it the Court concluded that "[t]he gravamen of plaintiff's cause of action is trespass to the person. (Citation omitted.) This may result from an injury either willfully or negligently inflicted." 210 N.C. at 810, 188 S.E. at 626. The Court said further, 210 N.C. at 812, 813, 188 S.E. at 627-28:

"It is no doubt correct to say that fright alone is not actionable, *Arthur v. Henry, supra,* but it is faulty pathology to assume that nervous disorders of serious proportions may not flow from fear or fright. *Hickey v. Welch,* 91 Mo. App., 4; 17 C.J., 838. Fear long continued wears away one's reserve.

"'As a general rule, damages for mere fright are not recoverable; but they may be recovered where there is some physical injury attending the cause of the fright, or, *in the absence of physical injury,* where the fright is of such character as to produce some physical *or mental impairment* directly and naturally resulting from the wrongful act'—Sutton, J., in *Candler v. Smith,* 50 Ga. App., 667, 179 S.E., 395.

"If it be actionable willfully or negligently to frighten a team by blowing a whistle, *Stewart v. Lumber Co., supra,* or by beating a drum, *Loubz v. Hafner, supra,* thereby causing a run-away and consequent damage, it is not perceived upon what logical basis of distinction the present action can be dismissed as in case of nonsuit. *Arthur v. Henry, supra.*

*Kirby,* rightly or wrongly, has been read to require some physical injury in addition to emotional distress. *See* Prosser § 12, p. 59, n. 19.

Statements that "fright" alone is not actionable and that the harm suffered must be a foreseeable result of defendant's conduct appear in other cases relied on in *Stanback,* all of which, in turn,

Dickens v. Puryear

rely on *Kirby*. These are: *Crews v. Finance Co.*, 271 N.C. 684, 157 S.E. 2d 381 (1967) (highhanded debt collection efforts; held, plaintiff could recover for resulting nervousness, acute angina, and high blood pressure); *Slaughter v. Slaughter*, 264 N.C. 732, 142 S.E. 2d 683 (1965) (defendant, son of plaintiff, exploded firecrackers outside his home where plaintiff was a guest with the purpose of frightening his children who were in the room with plaintiff; held, plaintiff could recover for a fractured left hip suffered when she fell as a result of becoming emotionally upset at the noise); *Langford v. Shu*, 258 N.C. 135, 128 S.E. 2d 210 (1962) (plaintiff, defendant's next door neighbor, frightened by defendant's practical joke, a "mongoose box," stumbled while fleeing the box, fell and tore a cartilage in her knee; held, plaintiff could recover for damages to her knee); *Martin v. Spencer*, 221 N.C. 28, 18 S.E. 2d 703 (1942) (defendant directed verbal abuse at plaintiff and engaged in altercation with plaintiff's brother in a dispute over a boundary; held, plaintiff could recover for a miscarriage which, according to her evidence, resulted from "fright occasioned by the conduct of the defendant."); *Sparks v. Products Corp.*, 212 N.C. 211, 193 S.E. 31 (1937) (held, plaintiff could recover for "shock and injury to her nerves, resulting in loss of weight, nervousness, periodical confinement in bed, and other ailments" caused by defendant's blasting operation which hurled a rock through the roof of plaintiff's home).

Although these earlier cases, except for *Sparks v. Products Corp.*, did permit recovery under circumstances similar to those to which the modern tort of intentional infliction of mental distress is directed, the cases did not actually come to grips with the tort as it is now recognized by Prosser and the Restatement and as we recognized it in *Stanback*. These earlier cases were concerned with a broader concept of liability than the relatively narrow one now known as intentional infliction of mental distress. They were concerned with permitting recovery for injury, physical and mental, intentionally or negligently inflicted. The opinion in *Kirby* consistently refers to injuries which result from either wilful or negligent conduct. *Crews*, which relied on *Kirby*, dealt with intentional actions of a bill collector. The opinion, however, relied on § 436 of the Restatement. This section deals with *negligent* infliction of mental distress which results in physical harm. *Compare* Restatement § 46, particularly Comment *a*, p. 72, with § 436. To the extent, then, that these earlier cases required some "physical injury"[10] apart from mere mental or emotional distress and, in addition, talked in

terms of foreseeability, they did so in the context of negligently inflicted injuries and not in the context of the tort, as it is now recognized, of intentional infliction of mental distress. This Court in *Williamson v. Bennet,* 251 N.C. 498, 112 S.E. 2d 48 (1960) denied recovery for a serious nervous disorder unaccompanied by physical injury, allegedly caused by defendant's negligent operation of an automobile. Denial, however, was on the ground that the connection between the relatively minor accident and plaintiff's condition was too tenuous and too "highly extraordinary" to permit recovery. The Court noted, however, *id.* at 503, 112 S.E. 2d at 51:

> "This cause involves mental distress and invasion of emotional tranquility. It concerns itself with fear and resultant neurasthenia allegedly caused by *ordinary negligence.* In so far as possible we shall avoid consideration of those situations wherein fright, mental suffering and nervous disorder result from intentional, wilful, wanton or malicious conduct." (Emphasis original.)

*Stanback,* then, should not be read as grafting "physical injury" and "foreseeability" requirements on the tort of intentional infliction of mental distress. Neither should it be read as grafting the requirements of this tort on other theories of recovery for mental and emotional distress dealt with in our earlier cases. We leave those theories where they lay before *Stanback.*

**[4]** *Stanback,* in effect, was the first formal recognition by this Court of the relatively recent tort of intentional infliction of mental distress. This tort, under the authorities already cited, consists of: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another. The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress. Recovery may be had for the emotional distress so caused and

---

[10] A strong argument can be made that even these earlier decisions did not intend to make "physical injury" an essential element of the claims asserted. When the Court said that "mere fright" was not actionable it was probably attempting to distinguish *not* between physical injury and emotional disturbance but rather between momentary or minor fright and serious emotional or nervous disorders. *But see Williamson v. Bennett, infra,* in text.

for any other bodily harm which proximately results from the distress itself.

## B.

We now turn to some principles governing the entry of summary judgment. The movant must clearly demonstrate the lack of any triable issue of fact and entitlement to judgment as a matter of law. *Pitts v. Pizza, Inc.*, 296 N.C. 81, 249 S.E. 2d 375 (1978). The record is considered in the light most favorable to the party opposing the motion." *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975). "[A]ll inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Page v. Sloan*, 281 N.C. 697, 706, 190 S.E. 2d 189, 194 (1972), *quoting* 6 Moore's Federal Practice ¶ 56.15[3] at 2337 (2d ed. 1971).

In ruling on summary judgment, a court does not resolve questions of fact but determines whether there is a genuine issue of material fact. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974). An issue is material "if the facts alleged are such as to constitute a legal defense or are of such nature as to effect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E. 2d 823, 830 (1971). Thus a defending party is entitled to summary judgment if he can show that claimant cannot prove the existence of an essential element of his claim, *Best v. Perry*, 41 N.C. App. 107, 254 S.E. 2d 281 (1979), or cannot surmount an affirmative defense which would bar the claim.

Summary judgment is, furthermore, a device by which a defending party may force the claimant to produce a forecast of claimant's evidence demonstrating that claimant will, at trial, be able to make out at least a *prima facie* case or that he will be able to surmount an affirmative defense. Under such circumstances claimant need not present all the evidence available in his favor but only that necessary to rebut the defendant's showing that an essential element of his claim is non-existent or that he cannot surmount an affirmative defense. *See Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E. 2d 419, 421 (1979); *see generally* Louis, *Federal Summary Judgment Doctrine: A Critical Analysis*, 83 Yale L. J. 745 (1974).

## C.

**[5]**   The question, then, is whether in light of the principles applicable to motions for summary judgment and those applicable to the torts of assault and battery and intentional infliction of mental distress, the evidentiary showing on defendants' motions for summary judgment demonstrates as a matter of law the non-existence of a claim for intentional infliction of mental distress. Stated another way, the question is whether the evidentiary showing demonstrates as a matter of law that plaintiff's only claim, if any, is for assault and battery. If plaintiff, as a matter of law, has no claim for intentional infliction of mental distress but has a claim, if at all, only for assault and battery, then plaintiff cannot surmount the affirmative defense of the one-year statute of limitations and defendants are entitled to summary judgment on the ground of the statute.

Although plaintiff labels his claim one for intentional infliction of mental distress, we agree with the Court of Appeals that "[t]he nature of the action is not determined by what either party calls it . . . ." *Hayes v. Ricard,* 244 N.C. 313, 320, 93 S.E. 2d 540, 545-46 (1956). The nature of the action is determined "by the issues arising on the pleading and by the relief sought," *id.,* and by the facts which, at trial, are proved or which, on motion for summary judgment, are forecast by the evidentiary showing.

Here much of the factual showing at the hearing related to assaults and batteries committed by defendants against plaintiff. The physical beatings and the cutting of plaintiff's hair constituted batteries. The threats of castration and death, being threats which created apprehension of immediate harmful or offensive contact, were assaults. Plaintiff's recovery for injuries, mental or physical, caused by these actions would be barred by the one-year statute of limitations.

The evidentiary showing on the summary judgment motion does, however, indicate that defendant Earl Puryear threatened plaintiff with death in the future unless plaintiff went home, pulled his telephone off the wall, packed his clothes, and left the state. The Court of Appeals characterized this threat as being "an immediate threat of harmful and offensive contact. It was a present threat of harm to plaintiff . . . ." 45 N.C. App. at 700, 263 S.E. 2d at 859. The Court of Appeals thus concluded that this threat was also an assault

barred by the one-year statute of limitations.

We disagree with the Court of Appeals' characterization of this threat. The threat was not one of imminent, or immediate, harm. It was a threat for the future apparently intended to and which allegedly did inflict serious mental distress; therefore it is actionable, if at all, as an intentional infliction of mental distress. *Wilson v. Wilkins, supra*, 181 Ark. 137, 25 S.W. 2d 428; Restatement § 31, Comment *a*, pp. 47-48.

The threat, of course, cannot be considered separately from the entire episode of which it was only a part. The assaults and batteries, construing the record in the light most favorable to the plaintiff, were apparently designed to give added impetus to the ultimate conditional threat of future harm. Although plaintiff's recovery for injury, mental or physical, directly caused by the assaults and batteries is barred by the statute of limitations, these assaults and batteries may be considered in determining the outrageous character of the ultimate threat and the extent of plaintiff's mental or emotional distress caused by it.[11].

Having concluded, therefore, that the factual showing on the motions for summary judgment was sufficient to indicate that plaintiff may be able to prove at trial a claim for intentional infliction of mental distress, we hold that summary judgment for defendants based upon the one-year statute of limitations was error and we remand the matter for further proceedings against defendant Earl Puryear not inconsistent with this opinion.

### III.

**[6]** Finally, we consider whether summary judgment for defendant Ann Puryear was proper notwithstanding the fact that the one-year limitation period of G.S. 1-54(3) does not completely bar plaintiff's claim. Plaintiff alleges that Ann Puryear conspired with

---

[11] We note in this regard plaintiff's statement in his deposition that "[i]t is not entirely [the future threat] which caused me all of my emotional upset and disturbance that I have complained about. It was the ordeal from beginning to end." If plaintiff is able to prove a claim for intentional infliction of mental distress it will then be the difficult, but necessary, task of the trier of fact to ascertain the damages flowing from the conditional threat of future harm. Although the assaults and batteries serve to color and give impetus to the future threat and its impact on plaintiff's emotional condition, plaintiff may not recover damages flowing directly from the assaults and batteries themselves.

Earl Puryear to commit the tort of intentional infliction of mental distress upon plaintiff, and submits that there is evidence of conspiracy sufficient to withstand her motion for summary judgment. Defendant Ann Puryear argues in response that plaintiff's evidence is insufficient to establish anything more than conjecture or suspicion as to her participation in the alleged conspiracy.

A conspiracy has been defined as "an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way." *State v. Dalton*, 168 N.C. 204, 205, 83 S.E. 693, 694 (1914). The common law action for civil conspiracy is for damages caused by acts committed pursuant to a conspiracy rather than for the conspiracy, *i.e.*, the agreement, itself. *Shope v. Boyer*, 268 N.C. 401, 150 S.E. 2d 771 (1966). Thus to create civil liability for conspiracy there must have been an overt act committed by one or more of the conspirators pursuant to a common agreement and in furtherance of a common objective. *Id.* Although civil liability for conspiracy may be established by circumstantial evidence, the evidence of the agreement must be sufficient to create more than a suspicion or conjecture in order to justify submission of the issue to a jury. *Edwards v. Ashcraft*, 201 N.C. 246, 159 S.E. 355 (1931); *State v. Martin*, 191 N.C. 404, 132 S.E. 16 (1926). An adequately supported motion for summary judgment triggers the opposing party's responsibility to come forward with facts, as distinguished from allegations, sufficient to indicate he will be able to sustain his claim at trial. *See Connor Co. v. Spanish Inns*, 294 N.C. 661, 242 S.E. 2d 785 (1978); *see also Moore v. Fieldcrest Mills, Inc., supra*, 296 N.C. 467, 251 S.E. 2d 419.

In the present case, as earlier discussed, the one-year statute of limitations serves to bar plaintiff's claim for assault and battery. Plaintiff's evidentiary showing, therefore, must be enough to indicate that at trial plaintiff will be able to prove the existence of an agreement between defendants to intentionally inflict mental distress as distinguished from an agreement to commit assault and battery. Judge Braswell, in ruling upon defendant Ann Puryear's motion for summary judgment, considered plaintiff's complaint, a transcript of plaintiff's deposition, and a portion of the transcript in the criminal case arising out of this occurrence. The facts gleaned from these sources indicate only that Ann Puryear was present when plaintiff arrived, that upon Earl Puryear's command she emerged from a nearby building and stated her desire not to see

plaintiff, and that she drove off with her daughter before the commission of the assaults and batteries and the alleged intentional infliction of mental distress. Plaintiff's evidentiary showing, then, is insufficient to indicate that at trial plaintiff may be able to prove an agreement between Earl Puryear and Ann Puryear to intentionally inflict mental distress upon him. The plaintiff in essence relies on the allegations of conspiracy in his complaint and possible speculation or conjecture as to an agreement resulting from Ann Puryear's presence at the site where plaintiff was beaten and threatened. This is not enough to survive defendant Ann Puryear's motion for summary judgment. *See Edwards v. Ashcraft, supra,* 201 N.C. 246, 159 S.E. 2d 355. *See also Moore v. Fieldcrest Mills, Inc., supra,* 296 N.C. 467, 251 S.E. 2d 419.

For the reasons stated the decision of the Court of Appeals affirming summary judgment in favor of Earl Puryear is reversed. The claim against Earl Puryear is remanded to that court with instructions that it be remanded to Wake Superior Court for further proceedings not inconsistent with this opinion. The decision of the Court of Appeals affirming summary judgment in favor of Ann Puryear is affirmed.

Reversed in part.

Affirmed in part.

Justice MEYER did not participate in the consideration and decision of this case.