***********
The Full Commission has reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and oral arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives and having reviewed the competent evidence of record, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner with minor modifications.
 ***********
The following documents were proffered as evidence as:
 EXHIBITS
1. Stipulated Exhibit 1: Executed Pre-Trial Agreement *Page 2 
2. Stipulated Exhibit 2: Disciplinary proceeding records for Plaintiff and inmate McAllister
3. Stipulated Exhibit 3: Investigating officer's report, witness statements and lockup screening forms
4. Stipulated Exhibit 4: Disciplinary infraction reports for Plaintiff and inmates McAllister and Black
5. Stipulated Exhibit 5: DOC Inmate Disciplinary Procedures
6. Stipulated Exhibit 6: Administrative grievance documents
7. Stipulated Exhibit 7: Selected portions of Plaintiff's medical records
8. Stipulated Exhibit 8: DOC documentation concerning 2/6/06 incident
9. Stipulated Exhibit 9: Disciplinary histories for Plaintiff and inmate McAllister
10. Stipulated Exhibit 10: DOC documentation of 2/6/06 tobacco charge against inmate McAllister
11. Plaintiff's Exhibit 1: Written statement of inmate Henderson dated 3/27/06 (admitted over Defendants' objection subject to exclusion of portions containing inadmissible hearsay)
 *********** ISSUE
Were employees or agents of the Defendant negligent in failing to protect Plaintiff from an assault by inmate John McAllister as alleged in Plaintiff's State Tort Claim Affidavit?
 *********** *Page 3 
All of the competent evidence of record and reasonable inferences flowing therefrom engenders the following: FINDINGS OF FACT
1. On February 6, 2006, Plaintiff was incarcerated in the BC1D Unit at Central Prison. Another inmate, John McAllister, was also incarcerated in that unit.
2. During the day on February 6, 2006, because of complaints from other inmates in the BC1D Unit, McAllister was moved to another cell in the BC1E Unit, which shared meals, canteen and church with the BC1D Unit.
3. At approximately 4 p.m. on February 6, 2006, following McAllister's transfer, a group of inmates, including Plaintiff and McAllister, were ascending a metal stairway on their way to supper. McAllister approached Plaintiff from behind and assaulted him by grabbing his dreadlocks, pulling his shirt up over his head, and dragging Plaintiff down the stairway, slamming his head on the steps as he went. Plaintiff did not take any action to defend himself. Once McAllister dragged Plaintiff to the bottom of the steps, he struck Plaintiff once in the face with an object before disengaging from the attack. Both McAllister and Plaintiff were handcuffed and taken to disciplinary segregation.
4. Plaintiff did not instigate this attack or participate in the altercation with McAllister.
5. As a result of this attack, Plaintiff suffered the following injuries and conditions:
 a. Broken nose, which remains deformed and asymmetrical;
 b. Severe respiratory infection as a result of the broken nose;
 c. Ongoing problems with his left sinus cavity;
 d. Infra-orbital fracture on the right side; *Page 4 
 e. Conjuctival hemorrhage in the left eye;
 f. Chipped top front tooth;
 g. Small laceration to the right knee; and
 h. Headaches and pain.
5. Plaintiff was treated for his injuries and conditions at the Central Prison hospital, Wake Medical Center, Duke University Medical Center and Duke Eye Center. He was provided with pain medications and antibiotics to treat his respiratory infection.
6. Defendant admits in its Answer that "Plaintiff suffered injuries to his nose, eye and knee as a result of the altercation on February 6, 2006."
7. Inmate McAllister was uninjured in the attack.
8. On February 4, 2006, two days before the attack, Plaintiff and another inmate, Paul Henderson, both informed Lt. Vines, the Defendant's employee assigned to the BC1D Unit, that McAllister had threatened to physically harm Plaintiff because McAllister believed that Plaintiff had "snitched" on him. Plaintiff requested that Lt. Vines have McAllister moved to a different unit.
9. On February 6, 2006, at about 2:30 p.m., approximately one and a half hours before the attack, Plaintiff and inmate Henderson both informed Officer Walter James, Defendant's employee, that McAllister continued to physically threaten the Plaintiff. Plaintiff again requested that McAllister be moved to a different unit. Officer James responded that "his hands were tied" because McAllister had already been moved to a different cell block within the unit.
10. Plaintiff and Henderson's account of their conversation warning Officer James of the risk of an impending attacked is not impeached on the record and is accepted as credible. *Page 5 
11. Prior to February 6, 2006, inmate Henderson forwarded a confidential written statement to Lt. Anthony Burroughs, Defendant's employee, regarding inmate McAllister's use of intimidation tactics throughout the BC1D Unit.
12. Both Plaintiff and inmate McAllister were charged with the disciplinary offense of fighting because of the February 6, 2006 incident. Plaintiff's charge was dismissed. McAllister pleaded guilty and received 10 days in disciplinary segregation.
13. In the context of the repeated warnings conveyed to Defendant's employees and the record evidence of the assault and battery, Defendant's contention that Plaintiff initiated or participated in a fight with McAllister before or during the attack is not well taken.
14. Prior to February 6, 2006, inmate McAllister had a lengthy record of disciplinary offenses while incarcerated dating to as early as 1979. These charges included guilty pleas to assault with weapon in 2000 and 2002 and three guilty pleas and a finding of guilty on four separate charges of threatening harm/injury to staff members in 2004. Inmate McAllister also pleaded guilty to or was found guilty of numerous other charges, including setting fires, weapon possession, provoking assaults, fighting, making verbal threats, self-injurious behavior, disobeying orders and using profane language.
15. Lt. Vines testified that inmate McAllister was known throughout the institution as a behavioral problem prior to the date of the assault, but she attributed his notoriety not to assaultive behavior but rather to lewd conduct.
16. Lt. Vines had McAllister moved to a different cell block within the same unit earlier in the day on February 6, 2006 before the assault. Essentially, this move simply resulted in McAllister being relocated down the hall from Plaintiff and did not exclude contact with Plaintiff in the common areas although inmates are ostensibly under the escort of Correctional *Page 6 
Officers. Notably, when the attack occurred, there were approximately 100 inmates walking to the mess hall being escorted by one Corrections Officer who was unable to prevent the attack.
17. Lt. Vines further testified that she moved McAllister because Plaintiff and others had complained that he was trying to "run the unit" and boss others around, particularly about which programs would be shown on the television in the common area. She testified that McAllister and Plaintiff remained in the same unit because Plaintiff never requested protective custody, and because she never received a written statement of any specific threat of physical violence toward Plaintiff posed by McAllister.
18. Given the repeated warnings received by Defendant's employees preceding the McAllister's assault, Defendant's employee knew or should have known that McAllister posed a substantial danger to the Plaintiff. Based upon the greater weight of the evidence, Defendant's employees failed to take reasonably prudent measures to protect Plaintiff from McAllister.
 ***********
The foregoing Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. The North Carolina Industrial Commission is invested with jurisdiction to hear tort claims against departments, institutions and agencies of the State. N.C. Gen. Stat. § 143-291(a).
2. Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties.Bolkhir v. N.C. State Univ., 321 N.C. 706, 709 (1988).
3. Defendant had a duty of reasonable care to protect Plaintiff from reasonably foreseeable harm. Failure to do so constitutes negligence. Taylor v. N.C. Dept. of Correction,88 N.C. App. 446, 363 S.E.2d 868 (1988). Prison officials are liable when they have knowledge *Page 7 
of, or in the exercise of reasonable care should have anticipated, danger to an inmate and fail to take appropriate precautions to safeguard inmates. Williams v. Adams, 288 N.C. 501, 504 (1975).
4. Plaintiff has proven by the greater weight of the evidence that Defendant's employees; particularly Lt. Vines, Lt. Burroughs and Officer James, knew or should have known that McAllister posed an immediate risk of physical harm to Plaintiff and they had a duty to use reasonable care to protect Plaintiff from inmate McAllister based upon the knowledge of the substantial risk. Taylor v.N.C. Dept. of Correction, 88 N.C. App. 446, 363 S.E.2d 868.
5. Defendant's officers breached their duty to protect Plaintiff by failing to take reasonably prudent measures to prevent McAllister from coming into contact with Plaintiff under circumstances that would provide McAllister with the opportunity to attack Plaintiff. This failure allowed McAllister to attack Plaintiff. N.C. Gen. Stat. § 143-291.
6. Based on Defendant employees' knowledge of McAllister's history and his specific and repeated threats toward Plaintiff, it was reasonably foreseeable that McAllister would attack Plaintiff if given the opportunity. Taylor v. N.C. Dept. of Correction,88 N.C. App. 446, 363 S.E.2d 868.
7. Plaintiff was not contributorily negligent as the greater weight of the evidence establishes that he did not engage in any intentional conduct that directly or proximately contributed to his injuries. N.C. Gen. Stat. § 143-291.
8. As a direct and proximate result of Defendant's officers' breach of their duty of reasonable care toward Plaintiff, Plaintiff sustained significant injuries, including the trauma of being dragged down a flight of stairs, attacked and beaten in the face, pain and suffering and permanent facial and dental disfigurement. Given the nature and extent of Plaintiff's injuries, *Page 8 
$12,000.00 is a reasonable sum for Plaintiff's damages. Defendant shall pay Plaintiff for his costs incurred in prosecuting this action. Dickens v. Puryear,302 N.C. 437, 276 S.E.2d 325 (1981).
 ***********
The foregoing Findings of Fact and Conclusions of Law engender the following:
 ORDER
1. Defendant pay Plaintiff and the Plaintiff shall recover the sum of $12,000.00 as damages.
2. Defendant shall pay Plaintiff's costs.
This the ___ day of December 2009.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER