**Ellen Lucinda DELK, Plaintiff,**

v.

**ARVINMERITOR, INC.; John Hock; Fred Harbinson; John Parr; Doris Williams; and James Mackey, Defendants.**

**No. CIV. 1:00CV242.**

United States District Court,
W.D. North Carolina,
Asheville Division.

Jan. 2, 2002.

and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Defendants, as the moving parties, have an initial burden to show a lack of evidence to support Plaintiff's case. *See Shaw, supra.* If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does in fact exist. *Id.*

The Court looks to the record to determine the facts of the case; in considering the Defendants' motions, the Court must view the pleadings and materials presented in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, this Court will examine the full record in the light most favorable to the nonmovant, the Plaintiff, to determine the existence of any issue of material fact and whether judgment for the Defendants is warranted as a matter of law.

Wade Hall, Asheville, NC, for plaintiff.

Margaret H. Campbell, Ogletree, Deakins, Nash, Smoak & Stewart, Atlanta, GA, A. Bruce Clarke, C. Matthew Keen, Ogletree, Deakins, Nash, Smoak and Stewart, Raleigh, NC, for defendants.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on a joint motion by Defendants' Meritor Automotive, Inc., Hock, Harbinson, and Williams for summary judgment and on motion of Defendant Parr for summary judgment. Default has been entered against the Defendant Mackey as he has made no appearance in this action.

### I. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact

### II. FACTUAL BACKGROUND

The Plaintiff was employed in the gearing department at the manufacturing facility in Fletcher, North Carolina, operated by Defendant ArvinMeritor, Inc. (Meritor)[1]. Plaintiff began working there in

---

1. Plaintiff objects that ArvinMeritor, Inc., is an "interloper" in this action because no disclosure of corporate affiliation or motion to substitute parties or amend the caption of the complaint has been made under Local Rule 26.2 despite the order of the Magistrate Judge requiring the Defendant "Meritor" to clarify its corporate affiliations and nomenclature. Meritor filed a disclosure of corporate affiliations on October 3, 2001, wherein it asserts that the Fletcher facility is owned by Meritor Heavy Vehicle Systems, L.L.C., a wholly owned subsidiary of ArvinMeritor, Inc. The Court accepts this filing as adequate compli-

1988 in an assembly position when the facility was operated by the predecessor to Meritor, Rockwell International. Sometime around 1993 or 1994, Plaintiff was promoted to a machinist position. Throughout her employment, Plaintiff worked the third shift at the plant.

The difficulties at Meritor which led to this lawsuit are thoroughly entangled in a controversy between Defendant John Parr (Parr), who worked as maintenance manager for Meritor, and Joyce Reese, another employee at the Fletcher facility. Parr was accused of making unwanted sexual advances towards Reese. The details of that dispute are summarized in a prior decision of this Court. *See Reese v. Meritor Automotive, Inc.*, 113 F.Supp.2d 822 (W.D.N.C.2000), *aff'd*, 5 Fed.Appx. 239, 2001 WL 227329 (4th Cir.2001).

Plaintiff also alleges that Parr made unwanted sexual advances towards her, beginning soon after she started work at Meritor. Parr told Plaintiff that he "liked women from Transylvania County and that he liked dark-haired women." Exhibit 1, Deposition of Ellen Lucinda Delk, *attached to* Defendant Parr's Memorandum in Support of Motion for Summary Judgment, filed December 6, 2001, at 128. Sometime in the early 1990's, Parr visited Plaintiff's house ostensibly to look at a vehicle that Plaintiff had for sale. Parr repeated his comments about women from Transylvania County and Plaintiff got the impression that Parr thought "he was going to look at more than the car." *Id.*, at 142. Parr also consistently asked Plaintiff to accompany him on fishing trips. Plaintiff estimates Parr asked her about fishing or to go fishing near her home around 25 times over the course of approximately 10 years when they both worked at Meritor. *Id.*, at 136–38. At some point when Plaintiff re-

ceived tulips at work, Parr told her a joke which she found offensive. *Id.*, at 123–25.

According to Plaintiff, Parr continued his inappropriate behavior towards her in May 1998. This was after his involvement with Reese had begun to come to light at the plant. Parr approached Plaintiff at the plant looking for Mark Turner, a facilitator at the plant. Turner had just taken action to prevent Parr from seeing Reese on her breaks at the plant. Parr told Plaintiff that he would "fuck up anybody that stood between [Reese] and him." *Id.*, at 40. Parr also stated that "nobody messed with him" and that "people would be sorry." *Id.* Also during this conversation, Parr repeated his request to Plaintiff that she take him fishing with her. *Id.* He asked her if she would give him "an Indian tour." *Id.* This conversation was the last confirmed contact between Parr and Plaintiff.

Plaintiff asserts that she received a threatening letter in the mail in April 1999. *Id.*, at 47. She believes that Parr sent this letter in an attempt to prevent her from giving her deposition in the Reese case. While Plaintiff has no personal knowledge of the origins of the letter, she does offer a handwriting expert whose opinion is that Parr wrote the letter. Defendants challenge both the qualifications and conclusions of Plaintiff's expert. The authorship of the letter remains in dispute.

Plaintiff's involvement in the Reese matter was more significant than merely providing her testimony, however. She complained to Bill Smith, another manager at Meritor, about the relationship between Reese and Parr in of 1997. *Id.*, at 327–28. She provided management with copies of "love letters" sent from Parr to Reese which Reese had given her. *Id.* Plaintiff

ance with Local Rule 26.2, and *sua sponte* corrects the caption to read "ArvinMeritor, Inc." in lieu of "Meritor Automotive, Inc." *See also,* Rule 9(a) Fed.R.Civ.P.

was invited to participate in a meeting on May 15, 1998, between Reese and Defendants John Hock (Hock) and Fred Harbinson (Harbinson), management level employees of Meritor. *Id.*

What has become the most contentious component of this litigation began in December 1997 when Defendant James Mackey (Mackey), a security guard at the plant, acting on his own initiative, searched the locker of Plaintiff's co-worker Keith Duncan, looking for illegal drugs. Exhibit 5, Deposition of James Mackey, *attached to* Defendant Parr's Memorandum, at 15–17. He claims to have found certain graphic photographs in the locker which Duncan took of Plaintiff at her home. *Id.;* Delk Deposition, at 171. There is a dispute concerning whether Mackey found the pictures in Duncan's locker as he says or they were in Plaintiff's locker inside her purse, as she says. *Id.,* at 434; Affidavit of Joyce Reese, *attached to* Plaintiff's Reply to Defendant Parr's Motion for Summary Judgment, filed December 20, 2001, at 2–3. Regardless, Mackey came into possession of the photographs and a video cassette tape which contained a brief image of Duncan and Plaintiff. Exhibit 2, Deposition of John Parr taken October 5, 2001 [Parr Deposition II], *attached to* Defendant Parr's Memorandum, at 26.

Mackey turned these photographs over to Parr, who was the only management level employee on duty at the time. *Id.,* at 96–102; Mackey Deposition, at 26–27. Parr had the photographs in his possession from December 1997 until shortly after the Reese matter began to evolve in May 1998. Reese avers that Parr showed her the photographs sometime in early January 1998 and told her that he intended to use them to dissuade Plaintiff from involvement in the Reese matter. Reese Affidavit, at 2–3. Parr denies that he took any action relating to the photographs until he returned them to Meritor after he was placed on leave in relation to the Reese matter. Parr Deposition II, at 101–02.

Parr returned the photographs to the plant during the week of May 18, 1998. Plaintiff's Exhibit 112, *attached to* Plaintiff's Response to Parr's Motion in Limine, filed December 27, 2001; Parr Deposition II, at 102. The exact chain of custody of the photographs is unclear but they may have been given back to Mackey, to Jay Walker, and to Stan Walker, all Meritor employees. The photos came into the possession of Bill Smith, Site Manager of the Meritor facility, who viewed the photographs in the company of Hock. Deposition of John T. Hock, taken October 8, 2001 [Hock Deposition I], *attached to* Plaintiff's Reply to Parr's Motion for Summary Judgment, filed December 20, 2001, at 23. When Hock and Smith received and opened the envelope, it had written on it, "Don't like rumors. Don't know what involved this one has, but this one is not lily-white. I just don't like what I hear. This one I know for a fact is a liar." Plaintiff's Exhibit 113, *attached to* Plaintiff's Reply to Defendants' Motion for Summary Judgment, filed December 26, 2001; Deposition of John T. Hock, taken October 15, 2001 [Hock Deposition II], *attached to* Plaintiff's Reply to Defendants' Motion for Summary Judgment, at 65. After viewing the photographs, Hock resealed them in an envelope and placed them in his desk drawer. Hock Deposition I, at 24. Sometime within two weeks of May 18, 1998, Hock took the photographs from his desk and removed them from the work site to his home. *Id.* Hock states that he did nothing further with the photographs and that no mention was made of them until the Reese matter in September 1999. He claims he then delivered the photographs to Meritor's counsel in case they became an issue in Reese case. Hock Deposition I, at 25, 32. Reese avers that she told Plaintiff of the

photographs and of Parr's statements to Reese in July 1998. Reese Affidavit, at 5. However in her own deposition, Plaintiff testified that she did not have any knowledge of the whereabouts of photographs prior to the Reese case and that no one had ever communicated any threats concerning the photographs to her. Delk Deposition, at 185–87, 367–69.

Plaintiff was deposed in Reese case on September 28, 2000, but never returned to work after that date. She requested "Salary Continuation Benefits" or disability payments from Meritor. After initially approving Plaintiff's request, MetLife, Meritor's third party administrator, determined in December 1999 that Plaintiff's health care providers had not provided a sufficient basis to provide those benefits. Plaintiff stopped receiving benefits. Delk Deposition, at 83, 377–79; Hock Deposition II, at 15; Affidavit of Doris Williams, *attached to* Defendants' Motion for Summary Judgment.

On January 20, 2000, Plaintiff telephoned Meritor and spoke with Defendant Doris Williams (Williams) concerning her benefits. Plaintiff wanted to know how she could respond to MetLife's decision. Williams advised her that most employees returned to work when their request for disability payments was denied. Williams Affidavit, at ¶ 9. At this point, Williams avers that Plaintiff threatened that if she were to return to work, she would bring a gun and kill everybody. *Id.*, at ¶ 10. Plaintiff denies making this statement. Delk Deposition, at 97. Although she does admit stating that if she returned to work she might be a danger to others she claims this statement was made in reference to operating the heavy machinery at the plant under the influence of her medication. *Id.*, at 98.

Williams reported her version of the phone conversation to Hock. Hock Deposition II, at 23. Based on Williams' statements and a conversation with in-house counsel, Hock determined that he should contact the Sheriff's department, and did so. *Id.* A warrant issued for Plaintiff's arrest based on Williams' testimony. Williams Affidavit, at ¶ 13. Subsequently, the Sheriff detained Plaintiff on that afternoon, she was released on her own recognizance, and the charge was later dismissed. Delk Deposition, at 517. Hock and Harbinson discussed Delk's alleged threat and they determined that she should be terminated. Hock Deposition II, at 25–26, 90. Hock prepared a termination letter which Harbinson signed. *Id.*, at 26.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) on March 17, 2000, claiming sex discrimination, harassment, and retaliatory discharge. Exhibit A, *attached to* Complaint. The EEOC issued a Dismissal and Notice of Rights on July 26, 2000, finding it was unable to conclude that the facts established a violation of any statute. Exhibit B, *attached to* Complaint. Plaintiff filed this lawsuit on October 23, 2000, raising Title VII claims against Meritor and other claims against the individual Defendants and Meritor.

## III. DISCUSSION OF CLAIMS

### A. Title VII

Plaintiff raises a number of claims against Defendant Meritor based on Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, *et seq.* She alleges sexual discrimination, sexual harassment, and retaliatory discharge.

### 1. Discriminatory Conduct

Although the portion of her complaint entitled "First Claim For Relief" lists only "Sexual Harassment" and "Retaliation" as

violations of Title VII by the Defendants, the factual allegations of her complaint has a section entitled "Disparate Treatment." While the Plaintiff has not specifically alleged such a violation, the Court will consider the substance of her complaint on this point rather than ignore Plaintiff's contentions. Meritor correctly notes that the claims Plaintiff alleges constitute sex discrimination are time barred. Under Title VII, an employee must file a charge with the EEOC within 180 days of the discriminatory or harassing conduct in order to maintain a cause of action for that conduct. 42 U.S.C. § 2000e–5(e). Here, all of the conduct which Plaintiff charges constitutes sex discrimination occurred prior to September 1999. Plaintiff filed her charges of sex discrimination, sexual harassment, and retaliatory discharge with the EEOC on March 17, 2000. Plaintiff argues that she has alleged continuing violations of Title VII but only in relation to the claims for harassment and retaliation. As such, any claims she may be attempting to allege under Title VII for sex discrimination arose prior to September 18, 1999, and are untimely.

### 2. Sexual Harassment

The complaint also sets out sexual harassment as an alleged violation of Title VII by the various Defendants. The factual allegations of the complaint list both *"quid pro quo"* and "hostile work environment" as bases for this claim. A claim for *quid pro quo* harassment involves proof that a supervisor demanded sexual favors in return for job benefits. *See, Kidwell v. Sheetz, Inc.,* 982 F.Supp. 1177, 1179 (W.D.Va.1997); *Spencer v. General Elec. Co.,* 894 F.2d 651, 658 (4th Cir.1990). To prevail on a hostile work environment

claim under Title VII, Plaintiff must establish four elements: (1) unwelcome conduct, (2) based on her gender, (3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment, and (4) a basis for imputing liability to Meritor. *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 241 (4th Cir.2000). Plaintiff's forecast of evidence fails on both claims.

Just as with the allegations of sex discrimination, all of the conduct Plaintiff alleges as bases for her claims of sexual harassment occurred well before September 18, 1999. Plaintiff's argument that Hock possessed the photographs past this date fails here as well. There are no allegations that Hock demanded sexual favors in return for keeping the photographs private. In fact there is no evidence that Plaintiff knew that Hock had the photographs until September of 1999. The facts underlying Plaintiff's claims for sexual harassment occurred more than 180 days before she filed her EEOC charge. 42 U.S.C. § 2000e–5(e). Consequently, these claims are time barred and are dismissed. Even if they were not time barred, the Defendant's motion for summary judgment would be granted on the merits.

■ As to the *quid pro quo* claim, Plaintiff does not set forth facts to support a claim that a superior at Meritor ever demanded sexual favors in return for job benefits.

■ However, Plaintiff does claim that Defendant Parr engaged in unwelcome conduct based on her gender.[2] The facts she presents in support of this allegation are insufficient to support a finding that Parr's conduct was so pervasive or severe as to alter the conditions of employment

---

**2.** While Plaintiff does make general allegations about "the old boys network" and "cold-shoulder treatment" for women, she presents no factual basis for claims other than the conduct of Defendant Parr.

and create a hostile work environment. In order to show that the conduct in question did create a hostile work environment, a plaintiff must show that the defendants conduct was objectively so severe and pervasive as to create a hostile or abusive work environment and the plaintiff subjectively perceived the environment to be hostile or abusive. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The Court assumes, without deciding, that Plaintiff has produced evidence to meet the subjective component of this test. The Supreme Court in *Harris* listed four factors to consider in determining whether the objective prong of this inquiry has been met. While this Court should consider all relevant factors, the primary inquiries are 1) the frequency of the conduct, 2) the severity of the conduct, 3) whether the conduct was physically threatening or humiliating, or merely offensive, and 4) whether it unreasonably interferes with the performance of work duties. Id., at 23, 114 S.Ct. 367. Plaintiff's evidence of Parr's conduct towards her fails on all four counts.

Plaintiff's evidence shows that Parr's conduct, while inappropriate, was not pervasive or severe. Parr asked Plaintiff to accompany him on a fishing trip approximately once every four months. He visited Plaintiff at her home on one occasion to look at a vehicle which Plaintiff was attempting to sell. During this visit Parr conveyed the impression that he was interested in Plaintiff, but Plaintiff does not claim that Parr said anything inappropriate. Parr made a generally threatening statement in front of Plaintiff while angry at Turner. Except for the unsigned letter threatening Plaintiff's life which she received after Parr stopped working at Meritor, none of the evidence shows that Parr's conduct towards Plaintiff was physically threatening. Plaintiff does not point to any evidence that any of the alleged conduct interfered with her performance of her work duties. She fails to set forth facts sufficient to create a issue of fact about the existence of a hostile work environment. *See, Faragher v. Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

### 3. Retaliation

■ Finally, Plaintiff alleges that she was released from employment at Meritor in retaliation for cooperating with Joyce Reese in her lawsuit against Defendants Meritor and Parr. In order to state a *prima facie* case of retaliatory discharge under Title VII, Plaintiff must show "that: (1) she engaged in a protected activity; (2) that the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action." *Von Gunten v. Maryland,* 243 F.3d 858, 863 (4th Cir.2001); *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985). Once the Plaintiff has put forth a *prima facie* case, the burden shifts to the Defendants to produce a legitimate, non-retaliatory reason for the adverse action. *Ross,* 759 F.2d at 365. If the employer puts forth a legitimate, non-retaliatory reason for the adverse action, then the burden shifts back to the Plaintiff to prove that the employer's proffered reason is pretextual. *Id.*

Plaintiff asserts that her participation in the Reese matter, specifically her being deposed in that litigation, constitutes protected activity. Defendants do not dispute this contention. Nor do they dispute that the termination of Plaintiff's employment at Meritor constitutes adverse employment action. Meritor does argue, however, that Plaintiff has failed to put forth evidence of a causal connection between Plaintiff's testimony in the Reese matter and her dismissal. The company points out that the

sole basis Plaintiff asserts for concluding that a causal connection exists is the temporal connection between the two events. The Supreme Court has recently recognized that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County School Dist. v. Breeden*, 532 U.S. 268, ——, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997) (3–month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–1175 (7th Cir.1992) (4–month period insufficient)). Plaintiff testified in the Reese matter on September 28, 1999; she was fired from Meritor on January 25, 2000. Meritor asserts that, without additional evidence, this period of approximately four months is too long to support an inference that her termination was causally connected to her testimony.

Plaintiff responds that "temporal proximity is not measured with by calendar alone as Defendants imply." Plaintiff's Reply to Defendants' Motion for Summary Judgment, filed December 26, 2001, at 14. Even so, Plaintiff points to no evidence to support her claim of retaliation other than the fact that she was terminated within four months of her deposition testimony in Reese. She argues the fact that she was on disability leave should be taken into account in determining whether the length of time between her deposition and her discharge is small enough to infer retaliation. Plaintiff cites no authority for this position. The fact that Plaintiff's claim of retaliation was denied cuts against this argument. A third party has determined that her application for disability lacked a sufficient medical basis. She also argues, without citation, that her paychecks did not arrive in good order is evidence of retaliation. Meritor was somehow "baiting" Plaintiff into a confrontation by not sending her December checks on time. Plaintiff admits, however, that she did receive both the December checks and the letter from MetLife explaining that her claim for disability had been denied before her phone conversation with Williams. Delk Affidavit, *attached to* Plaintiff's Reply to Defendants' Motion. The temporary withholding of checks, therefore, is not evidence of a causal connection between her discharge and her testimony. Without any additional evidence of causation, the Court concludes that the temporal relationship between Plaintiff's testimony in the Reese matter is not "very close." As such, Plaintiff fails to establish a *prima facie* case of retaliatory discharge.

Even assuming that the four month interval was enough to sustain Plaintiff's *prima facie* case, there is no material issue of fact concerning Meritor's legitimate, non-discriminatory reasons for firing Plaintiff. Meritor contends that Plaintiff threatened violent action involving firearms over the phone with Defendant Williams. This threat was the basis for Plaintiff's termination, not her testimony in the Reese matter. Plaintiff offers no evidence that her alleged threat was the basis for her termination, she only disputes that she made the threat.

**B. Negligent and Intentional Infliction of Emotional Distress**

Plaintiff asserts that each of the individual Defendants has both negligently and intentionally inflicted severe emotional distress upon her. These allegations arise out of the same factual contentions as they relate to each Defendant.

In order to establish a claim for negligent infliction of emotional distress

under North Carolina law, Plaintiff must prove (1) the Defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the Plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the Plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Severe emotional distress has been defined as

> any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so, ... mere temporary fright, disappointment or regret will not suffice.

*Id.*

■■ To prevail on a claim for intentional infliction of emotional distress, Plaintiff must prove that one of the Defendants engaged in (1) extreme and outrageous conduct, (2) which was intended to cause, (3) and did in fact cause severe emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). The intent element can also be met by showing that the Defendants acted with reckless indifference to the likelihood that their conduct would produce severe emotional distress. *Id.* Extreme and outrageous conduct has been described at conduct which is "utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 493, 340 S.E.2d 116, 123 (1986).

■ As to the claims for intentional infliction of emotional distress, the Plaintiff is unable to meet the first element of her claim. None of the conduct alleged against any of the Defendants rises to the level of "extreme and outrageous" conduct. None of the Defendants have done any act which is "utterly intolerable in a civilized community." *Hogan*, 79 N.C.App. at 492, 340 S.E.2d at 123. The determination whether conduct is "extreme and outrageous" is a question of law for the Court to decide. *Dobson v. Harris*, 134 N.C.App. 573, 578, 521 S.E.2d 710, 714 (1999), *rev'd on other grounds*, 352 N.C. 77, 530 S.E.2d 829 (2000). Plaintiff relies heavily on her contentions surrounding the photographs of her as evidence of "extreme and outrageous" conduct on the part of Defendants. Defendant Parr's statements about the photograph were not made to Plaintiff. Plaintiff was not even aware of the statements until two months after he made them to Reese. None of the Defendant's conduct qualifies as "utterly intolerable in a civilized community."

■ Plaintiff alleges claims for negligent infliction of emotional distress against each of the individual Defendants.[3] She bases claims against Williams and Hock on her arrest after her termination. Plaintiff alleges claims against Hock, Parr, and Harbinson for "the circulation of nude photographs of Plaintiff," and for threats made to her concerning the Reese matter.

Plaintiff alleges she has suffered severe emotional distress as a result of the Defendant Williams, acting on the advice of Defendant Hock, "obtaining criminal warrants through the use of perjured testi-

---

**3.** Defendants Meritor, Hock, Harbinson, and Williams argue that the individuals were acting only in their capacities as employees of Meritor. As such they should be dismissed from the suit in their individual capacities as they relate to these tort claims. Defendants do not cite, and the Court cannot find, support for the argument that individuals cannot be held individually liable for their allegedly tortious conduct when acting as employees in an employment capacity.

mony". Defendants Hock and Williams correctly observe, however, that the allegation of perjured testimony has been stricken from the complaint on the Order of the Magistrate Judge. *See* Order, filed December 8, 2000. Plaintiff, therefore, presents no set of facts to support a claims for negligent infliction of emotional distress based on the warrant which issued based on Williams' testimony.

The Defendants argue that summary judgment in their favor is appropriate on Plaintiff's claims regarding the threatening statement of Parr in May of 1998, the threatening note received in April of 1999, and Parr's allegedly harassing conduct towards Plaintiff. She does not respond to these arguments. Even if she is not abandoning those claims, the Defendants motion would be granted on all counts.

▆▆▆ In her complaint, Plaintiff fails to allege that it was reasonably foreseeable to the Defendant's that their conduct could cause her severe emotional distress. North Carolina requires that a plaintiff asserting a claim for negligent infliction of emotional distress plead and prove that it was reasonably foreseeable to the defendants that the plaintiff could suffer severe emotional distress as a result of their conduct. *Ruark,* 327 N.C. at 304, 395 S.E.2d 85; *Robblee v. Budd Services, Inc.,* 136 N.C.App. 793, 795–96, 525 S.E.2d 847, 849–50 (2000). Assuming, without deciding, that not returning the photographs to Plaintiff and engaging in the threatening behavior were negligence on the part of Parr, Hock, and Harbinson and that she suffers from severe emotional distress, Plaintiff is still required to plead and prove that the Defendants knew or should have known that their conduct would cause not only distress and anxiety but also "mental

anguish." See, *Swaim v. Westchester Academy, Inc.,* 170 F.Supp.2d 580, 584 (M.D.N.C.2001). Because Plaintiff did not plead this element, and now offers no evidence in support of this element, the motion for summary judgment on the negligent infliction of emotional distress claim is granted.

▆▆▆ Plaintiff claims that Defendants Parr, Hock, and Harbinson committed the "tort of extortion" by using the photographs to "obtain her silence." Complaint, at 30. Defendants correctly point out that no North Carolina court has ever recognized the tort of extortion; in fact, Plaintiff admits there is only one North Carolina case where a claim for extortion is even discussed. *Harris v. NCNB, Nat'l Bank of N.C.,* 85 N.C.App. 669, 675–76, 355 S.E.2d 838, 843 (1987). In that case, the court stated in *dicta* that "[e]xtortion may be defined as wrongfully obtaining anything of value from another by threat, duress, or coercion." *Id.,* at 675, 355 S.E.2d at 843 (citing *Black's Law Dictionary,* at 696 (4th Rev. Ed.1968)). The Court finds that no cause of action for extortion exists under North Carolina law. Therefore, this claim is dismissed.

## C. RICO

▆▆▆ Plaintiff asserts causes of action under the civil damage provisions of both federal and state Racketeer Influenced Corrupt Organization (RICO) statutes. 18 U.S.C. §§ 1962(c), 1964(c), N.C. Gen. Stat. § 75D–8. Although Plaintiff does not clarify which of the various substantive RICO violations under § 1962 she alleges Defendants committed, the one which fits into the alleged facts is § 1962(c), conducting an enterprise through a pattern of racketeering activity.[4] In order to state a

---

4. Plaintiff does not allege that these Defendants received any proceeds from a pattern of

racketeering activity which any of them used or invested in an enterprise, nor does she

claim for a federal civil RICO violation, Plaintiff must show that the Defendants conducted an enterprise through a pattern of racketeering activity and that she was injured in her business or property as a result of that pattern. *Young v. Annarino,* 123 F.Supp.2d 915, 930 (W.D.N.C. 2000) (citing *Palmetto State Medical Center, Inc. v. Operation Lifeline,* 117 F.3d 142, 148 (4th Cir.1997)). First, Plaintiff must prove an enterprise, defined as an ongoing organization, formal or informal, in which the various associates function as a continuing unit. *Id.;* 18 U.S.C. § 1961(4). That enterprise must be engaged in, or its activities must affect, interstate or foreign commerce. 18 U.S.C. § 1962(c). Furthermore, the enterprise must be distinct from the Defendants alleged to have violated Subsection (c). *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of America,* 18 F.3d 1161, 1163 (4th Cir.1994). Second, Plaintiff must show a pattern of racketeering activity. *Annarino,* 123 F.Supp.2d at 930. At a minimum, this requires that she prove that each RICO Defendant committed at least two acts of racketeering activity within a ten-year period. *Id.;* 18 U.S.C. § 1961(5). These "predicate acts" must be related and must amount to, or pose the threat of, continued criminal activity. *Id.* The "predicate acts" constituting racketeering activity are clearly defined in § 1961(1).

Plaintiff's claim for a federal civil RICO violation fails on the first requirement. She has not alleged, nor has she offered any facts to support, the existence of an enterprise separate and distinct from the RICO Defendants. She argues in response to Defendant Parr's motion that

"the concerted activity of Mackey and Parr establishes a continuing enterprise between Mackey and Parr." Plaintiff's Response to Defendant Parr's Motion, at 14. No issue of fact is in dispute as to the question of the existence of an enterprise and Defendants are entitled to judgment as a matter of law on this claim.

North Carolina law sets forth civil remedies for violations of its RICO provisions. N.C. Gen.Stat. § 75D–8. To prevail on a claim for violations of the state RICO statute, Plaintiff must prove, *inter alia,* that the Defendants "engaged in a pattern of racketeering activity." N.C. Gen.Stat. § 75D–4(a)(1). This pattern is defined as

> means engaging in at least two incidents of racketeering activity that have the same or similar purposes, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated and unrelated incidents ... [and] that at least one other of such incidents occurred within a four-year period of time of the other.

N.C. Gen.Stat. § 75D–3(b). "Racketeering activity" is defined under the North Carolina statute as any conduct included in the definition under 18 U.S.C. § 1961(1), conduct involving "money laundering," conduct punishable under the controlled substances portion of the North Carolina General Statutes, and any conduct made criminal under Chapter 14 of the General Statutes, with certain exceptions. N.C. Gen.Stat. § 75D–(3)(c)(1)-(2).

 Plaintiff's claim for state civil RICO damages fails to allege conduct sufficient to support a finding that these

---

allege that any of the Defendants acquired or maintained any interest in an enterprise through a pattern of racketeering activity in violation of §§ 1962(a) or (b). Plaintiff now argues that the facts of the complaint are

sufficient to allege a conspiracy under § 1962(d), however, she must still allege that the Defendants conspired to violate one of the other § 1962 subsections.

RICO Defendants were "engaged in a pattern of racketeering activity."[5] While the definition of pattern of racketeering activity under § 75D–3(b) requires only two acts of "racketeering activity," this requirement is only a minimum. The Court must find that the Plaintiff has put forth evidence sufficient to support a finding that the acts of racketeering activity are not "isolated or unrelated incidents." See, *Kaplan v. Prolife Action League of Greensboro,* 123 N.C.App. 720, 725, 475 S.E.2d 247 *aff'd* 347 N.C. 342, 493 S.E.2d 416 (1997). Both the federal and state RICO statutes were enacted to aid law enforcement to combat organized crime. However, exactly what constitutes "organized crime" is difficult to determine. As a result, the language of the North Carolina RICO statute, interpreted liberally, is quite expansive. The General Assembly recognized the potentially broad interpretation of § 75D and attempted to clarify the limited nature of the section.

> It is not the intent of the General Assembly that this Chapter apply to isolated and unrelated incidents of unlawful conduct but only to an interrelated pattern of organized unlawful activity, the purpose or effect of which is to derive pecuniary gain. Further, it is not the intent of the General Assembly that legitimate business organizations doing business in this State, having no connection to, or any relationship or involvement with organized unlawful elements, groups or activities be subject to suit under the provisions of this Chapter.

N.C. Gen.Stat. § 75D–2(c). The definition in § 75D–3(b) sets forth the minimum requirements for finding that a person has engaged in a "pattern of racketeering activity;" however, the term "organized unlawful conduct" better encapsulates what is required to say that someone has "engaged" in that "pattern of unlawful activity." None of the conduct alleged against the Defendants, even viewed in a light most favorable to the Plaintiff, constitutes "organized unlawful conduct" that would support a claim under North Carolina's civil RICO provisions.

## D. Conversion

The complaint alleges that Defendant Meritor has converted the photographs to it use. Plaintiff demands return of the photographs as well as compensatory damages for any monetary benefit conveyed on Meritor by this conversion. The Court views this cause of action with skepticism. Plaintiff has offered no facts to support her claim for monetary damages as a result of the "conversion" of these photographs.

## E. Civil Conspiracy

Under North Carolina law there is no cause of action for civil conspiracy per se.[6] *Dickens,* 302 N.C. at 456, 276

---

**5.** The North Carolina RICO statute does not contain the same "enterprise" requirement as its federal counterpart. Section 75D–4 provides that:

> (a) No person shall:
> (1) "Engage in a pattern of racketeering activity or, through a pattern of racketeering activities or through proceeds derived therefrom, acquire or maintain, directly or indirectly, any interest in or control of any enterprise...." The statute thus prohibits "engaging in a pattern of

racketeering activity" even where that activity has no connection to any enterprise.

**6.** In her response to Defendant Parr's motion for summary judgment, Plaintiff asserts for the first time that her conspiracy claim is not limited to the "conspiracy to terminate or damage [her] employment opportunities with Defendant Meritor," as it states in her complaint but rather is a claim under 42 U.S.C. § 1985 for conspiracy to deprive her of her civil rights. She argues that three paragraphs of her complaint should have been sufficient

S.E.2d at 337; *Henderson v. LeBauer*, 101 N.C.App. 255, 260–61, 399 S.E.2d 142, 145 (1991). Plaintiff can state a claim for wrongful acts done in furtherance of a conspiracy which cause her harm. *Id.* This claim requires the showing of (1) an agreement between two or more persons (2) to do a wrongful act, (3) commission of some overt act by one member of the conspiracy in furtherance of the objectives, and (4) damage to the Plaintiff as a result of the actions of the conspirators. *Id.* If Plaintiff meets these elements, all of the conspirators are jointly and severally liable for the act of any one of them done in furtherance of the agreement. *Fox v. Wilson*, 85 N.C.App. 292, 301, 354 S.E.2d 737, 743 (1987). She may establish a civil conspiracy by circumstantial evidence; however, sufficient evidence of the agreement must exist "to create more than a suspicion or conjecture in order to justify submission of the issue to a jury." *Dickens, supra; see also, Dalton v. Camp*, 135 N.C.App. 32, 42, 519 S.E.2d 82, 89 (1999).

Here, Plaintiff has failed to put forward any evidence sufficient to establish an agreement among all, or any, of the Defendants. In response to the motions of Defendants, Plaintiff argues that there is sufficient evidence to support the existence of a conspiracy. The only facts Plaintiff points to in support of this contention, however, are Parr's statements to Reese concerning the photographs and the fact that Parr went onto the property at the facility in order to return the photographs to the company. These two pieces of evidence do not point toward the existence of an agreement among the Defendants. If

anything, they are evidence that Parr acted alone in dealing with the photographs. Plaintiff has failed to meet her burden of production on the existence of an agreement and her claim for conspiracy is dismissed.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the motions of the Defendants for summary judgment are **ALLOWED.** A Judgment dismissing this action is filed herewith.

**IT IS FURTHER ORDERED** that, in view of the Court's ruling on the Defendants' motions for summary judgment, Plaintiff's motion for entry of default judgment as to Defendant James Mackey is hereby **DENIED.**

**IT IS FURTHER ORDERED** that the case caption is amended by striking the words "Meritor Automotive, Inc." and inserting in lieu thereof the words "Arvin-Meritor, Inc."

**IT IS FURTHER ORDERED** that the remaining motions are hereby **DENIED** as moot.

## *JUDGMENT*

For the reasons set forth in the Memorandum and Judgment filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that the motion of Defendants Meritor Automotive, Inc., John Hock, Fred Harbinson, and Doris Williams is **ALLOWED,** and the Plaintiff's claims as to these Defendants

---

to place Defendants on notice that she was raising a § 1985 conspiracy claim. Not only is Plaintiff's late attempt to alter her claim from one for state law conspiracy into a federal conspiracy claim unsupported by the plain language of her complaint, but even the most liberal reading of the complaint would

also reveal that it is insufficient to state a claim under § 1985. The complaint fails to allege, *inter alia*, that the Defendants acted with discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 91, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

are hereby **DISMISSED WITH PREJU-DICE** in their entirety.

**IT IS FURTHER ORDERED, AD-JUDGED, AND DECREED** that the motion of Defendant John Parr for summary judgment is **ALLOWED,** and the Plaintiff's claims as to this Defendant are hereby **DISMISSED WITH PREJUDICE** in their entirety.

**IT IS FURTHER ORDERED, AD-JUDGED, AND DECREED** that the Plaintiff's claims as to Defendant Mackey are hereby **DISMISSED WITH PREJU-DICE** in their entirety.