Peder **GODFREDSON** et al., Plaintiffs,

v.

**JBC LEGAL GROUP, P.C.,**
**et al., Defendants.**

No. 504CV390FL1.

United States District Court,
E.D. North Carolina,
Western Division.

Aug. 15, 2005.

Christopher W. Livingston, White Oak, NC, for Peder Godfredson, Harold McNeil, Benjamin Walker, Gary Frost, Shawn Lambe, Michael Juiliano, Jr., Jean Strand, Holley Nisley, Individually and on behalf of all others similarly situated, plaintiffs.

William A. Blancato, McCall, Doughton & Blancato, P.L.L.C., Winston–Salem, NC, Michael C. Griffin, McGuire Woods, LLP, Charlotte, NC, for JBC Legal Group, PC, fka JBC & Associates, PC, Jack Boyajian, Marv Brandon, Esq., Ray "Ray Barkley", defendants.

## ORDER

FLANAGAN, Chief Judge.

This matter comes now before the court on defendants' motion to dismiss several counts of plaintiffs' complaint for failure to state a claim upon which relief can be granted and for improper venue, and to strike portions of the complaint as redundant, immaterial, impertinent, and scandalous [DE # 14], filed August 6, 2004. Plaintiffs have responded to the motion, and defendants have replied. In this posture the matter is ripe for ruling. For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiffs initiated this action in Cumberland County Superior Court on April 14, 2004, against defendants JBC Legal Group, P.C. (hereinafter "JBC"), Jack Boyajian, Marv Brandon, and Ray Barkley, alleging violations of the federal Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692, the North Carolina Debt Collection Act (hereinafter "NCDCA"), N.C.G.S. § 58–70, the North Carolina Unfair and Deceptive Trade Practices Act (hereinafter "NCUDTPA"), N.C.G.S. §§ 75–1.1, 75–50 to 56, the federal Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"), 18 U.S.C. § 1961 *et seq.*, the North Carolina RICO Act (hereinafter "NC RICO"), N.C.G.S. § 75D–1 *et seq.*, civil fraud, civil conspiracy, and civil extortion. Defendants filed notice of removal to the U.S. District Court, Eastern District of North Carolina, on June 10, 2004, pursuant to 28 U.S.C. § 1441, alleging that various of

plaintiffs' claims arose under federal law. On August 6, 2004, defendants filed the instant motion to dismiss for failure to state a claim and to strike paragraphs from the complaint [DE # 14]. On the same date, defendants also filed a motion to dismiss defendants Jack Boyajian, Marv Brandon and Wayne Franklin for lack of personal jurisdiction [DE # 16].[1]

On December 10, 2004, plaintiffs filed a motion for class certification, asserting that various of the claims brought in the complaint were brought on behalf of a nationwide class with respect to the federal claims, and a statewide class with respect to those claims brought under North Carolina law [DE # 33]. On December 30, 2004, defendants filed a consent motion seeking to extend time to respond to the motion for class certification until 20 days after the court's ruling on the instant motion to dismiss [DE# 35]. The case was reassigned to the undersigned on January 6, 2005.

On April 26, 2005, plaintiffs filed a motion to strike defendant Boyajian's affidavit in support of defendants' motion to dismiss for lack of personal jurisdiction [DE # 40]. By order entered July 12, 2005, the undersigned denied plaintiffs' motion to strike the affidavit. By order entered July 13, 2005, the undersigned granted in part and denied in part defendants' motion to dismiss for lack of personal jurisdiction [DE # 16]. The order was granted as to defendants Brandon and Franklin, who were dismissed from the action, and denied as to defendant Boyajian.

## STATEMENT OF THE FACTS

The undisputed facts in this case are as follows: defendant JBC Legal Group is a professional corporation engaged in the practice of law, including but not limited to debt collection activities. Defendant Jack Boyajian is a licensed attorney and president of defendant JBC. The nine individual plaintiffs are, variously, residents of North Carolina, South Carolina, Indiana, Utah, and Colorado.

Defendant JBC acknowledges that it contacted each of the nine individual plaintiffs, either by letter or by phone, seeking collection on debts, either dishonored checks or, in one case, an allegedly dishonored car loan. Plaintiffs allege that defendants knew that the debts sought for collection had either been paid off in full, were beyond the applicable statutes of limitation for legal action for collection of debt, or simply never existed. Plaintiffs claim that when they sought to verify the alleged debts, defendants simply sent a validation letter, repeating the allegations of the original communications seeking payment but not providing copies of the alleged dishonored checks or other proof of debt. Plaintiffs admit that in one case, that of plaintiff Walker, defendant JBC did send a copy of the dishonored check, but claim that defendants knew or should have known that the check had been paid off in full.

As to the four individual plaintiffs who reside in North Carolina, three allege that they received dunning letters from defendant JBC seeking payment on debts. Plaintiff Strand alleges that she discovered a negative item on her credit report that, upon research, appears to have been caused by a report by defendant JBC. Plaintiffs do not allege in the complaint that defendant Boyajian personally communicated with plaintiffs.

---

**1.** As noted in defendants' response to that motion, although the complaint named "Ray Barkley" as a defendant, "Ray Barkley" is a pseudonym used by Wayne Franklin, an employee of defendant JBC Legal Group.

Nor do plaintiffs allege that they ever made any payment to defendants in response to defendants' demands, or that defendants ever commenced legal action against them to collect the contested debts.

## COURT'S DISCUSSION

### I. Standard of Review

The purpose of a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir.1999). The court may dismiss a complaint for failure to state a claim only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). Nevertheless, while the court must take the facts in the light most favorable to the plaintiff, the court "need not accept the legal conclusions drawn from the facts [or] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir.2000); *see also Labram v. Havel,* 43 F.3d 918, 921 (4th Cir.1995) (stating that the court is not required to accept "conclusory allegations regarding the legal effect of the facts alleged"). In this way, a motion to dismiss "allows a court to eliminate actions that are fatally flawed in their legal premises." *Parham v. Pepsico, Inc.,* 927 F.Supp. 177, 178 (E.D.N.C.1995).

In resolving a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), the court must draw all inferences in favor of the plaintiff, and "the facts must be viewed as the plaintiff most strongly can plead them." *Three M Enterprises, Inc., v. Texas D.A.R. Enterprises, Inc.,* 368 F.Supp.2d 450, 454 (D.Md.2005). Ordinarily, venue in the federal courts is determined by the general venue statute, 28 U.S.C. § 1391. *Id.* at 455. With respect to cases removed to federal court from state court, however, venue is determined solely by the removal statute, 28 U.S.C. § 1441. *See Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665, 73 S.Ct. 900, 97 L.Ed. 1331 (1953) (holding that question of whether venue was proper under § 1391 was irrelevant to removed actions).

Federal Rule of Civil Procedure 12(f) allows the court, upon motion of the party or upon its own initiative, to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of the motion to strike "is to avoid the waste of time and money that arises from litigating unnecessary issues." *Simaan Inc. v. BP Products North America, Inc.,* 2005 WL 1166610 at *6 (M.D.N.C.) "The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike." Charles A. Wright and Arthur R. Miller, 5C *Federal Practice and Procedure* § 1382. However, motions to strike are "generally viewed with disfavor because striking a portion of a pleading is a drastic remedy." *Waste Management Holdings, Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir.2001). Therefore, "[m]otions to strike are rather strictly considered and have often been denied even when literally within the provisions of

Rule 12(f) where there is no showing of prejudicial harm to the moving party." *Tivoli Realty Inc. v. Paramount Pictures, Inc.,* 80 F.Supp. 800, 803, (D.Del.1948).

## II. Analysis

### A. Count II—plaintiffs' claims for violation of the NCDCA and NCUDTPA

Defendants argue that plaintiffs' claims under the NCDCA and NCUDTPA must fail because of the exception for professional services rendered by members of a learned profession. The North Carolina Court of Appeals has held that a claim under the NCDCA, alleging improper practices in the specific context of debt collection, must also satisfy the requirements of a more general claim under the NCUDTPA. *See Reid v. Ayers,* 138 N.C.App. 261, 531 S.E.2d 231, 235 (2000). Under the NCUDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 1–75.1–1(a). The statute goes on to state that "[f]or purposes of this section, 'commerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C.G.S. § 1–75.1–1(b).

The *Reid* court held that in order for the learned profession exemption to apply, a two-part test must be satisfied: (1) the person or entity performing the alleged act must be a member of a learned profession; and (2) the conduct in question must be a rendering of professional services. *See Reid,* 531 S.E.2d at 235. The North Carolina courts have held that the practice of law is a learned profession. *See Sharp v. Gailor,* 132 N.C.App. 213, 510 S.E.2d 702, 704 (1999). As for the rendering of professional services, the *Reid* court, while noting that not all activity by a lawyer or law firm would qualify, held that debt collection on behalf of clients is a professional service often performed by law firms and attorneys. *See Reid,* 531 S.E.2d at 235. The court therefore held that the defendant attorneys were entitled to the learned profession exemption from the NCUDTPA and NCDCA. *See id.* at 235–36.

Defendants JBC and Jack Boyajian argue that under *Reid,* they are entitled to the learned profession exemption. Defendants argue that as a law firm, JBC Legal Group as an entity is a member of a learned profession. Jack Boyajian, as an attorney, is also a member of a learned profession. Both defendants engaged in the practice of debt collection on behalf of their clients, and therefore were engaged in the rendering of professional services as defined by the *Reid* court.

Plaintiffs argue that defendants should be required to be licensed to practice law in North Carolina to gain the benefits of this exemption. Plaintiffs further argue that Jack Boyajian should be deemed to have waived this exemption, because he failed to supervise the non-attorney employees of defendant JBC Legal Group in their debt-collection activities. Plaintiffs cite no statute or case-law in support of either argument, and this court can find none. Finally, plaintiffs attempt to distinguish *Reid* and *Sharp* by arguing that the defendant attorneys in those cases were engaged in the practice of litigation, not merely in debt-collection.

■ The court concludes that plaintiffs' arguments are unpersuasive. The undersigned is reluctant to read into the exemption crafted by the North Carolina legislature an intent to benefit only learned professionals licensed to practice law in North Carolina. Had the legislature intended to make licensure a requirement to access the exemption, it could

certainly have done so. It did not. Nor is the court inclined to read into the exemption an unwritten provision for waiver because of insufficient supervision. Finally, plaintiffs' argument that the definition of professional legal services should be limited to litigation ignores the holding of *Reid* to the contrary. *See Reid*, 531 S.E.2d at 235 (disagreeing with plaintiffs' argument attempting to distinguish defendants' actions in debt collection from legal services such as drafting pleadings, negotiating settlements and preparing contracts). Finding no persuasive argument to distinguish these claims from those raised in *Reid*, the court concludes that plaintiffs' claims under the NCDCA and NCUDTPA should be dismissed as against defendants JBC Legal Group and Jack Boyajian.

### B. Count III—plaintiffs' claim for civil conspiracy

■ There is, under North Carolina law, no such thing as a civil action for conspiracy. There is, rather, an action for damages caused by acts committed pursuant to a formed conspiracy. *See Reid v. Holden*, 242 N.C. 408, 88 S.E.2d 125, 130 (1955). In order to make out such an action, plaintiff must show "(1) an agreement between two or more persons (2) to do a wrongful act, (3) commission of some overt act by one member of the conspiracy in furtherance of the objectives, and (4) damage to the plaintiff as a result of the actions of the conspirators." *Delk v. ArvinMeritor, Inc.*, 179 F.Supp.2d 615, 629 (W.D.N.C.2002).

Defendants initially raise the argument that plaintiffs have failed to allege any facts to support the existence of an agreement between the defendants or the objective of the alleged conspiracy. Plaintiffs in Count III of their complaint allege "[t]he facts as pleaded above show that two or more of the Defendants agreed between themselves to do unlawful acts or to do lawful acts in an unlawful way that caused damages to the Plaintiffs." Plaintiffs have not alleged any specific facts to support the existence of an agreement between the defendants. Defendants argue that despite the requirement that this court take the allegations of the complaint in the light most favorable to the plaintiffs, the statements of the plaintiffs in Count III are merely conclusions as to the legal effects of the facts alleged, and this court need not give these conclusions any weight. *See Davis v. Dillard National Bank*, 2003 WL 21297331 at 1 (M.D.N.C. June 4, 2003) (unpublished).

Plaintiffs have failed to respond to this argument. Nonetheless, the court concludes that it cannot agree with defendants that this is sufficient grounds to dismiss the complaint. Defendants are correct that plaintiffs must present sufficient evidence in support of the existence of an agreement before this claim can be submitted to a jury. *See Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325, 337 (1981). Defendants are also correct that plaintiffs have not yet done so. However, the obligation to submit evidence, rather than relying upon allegations, is triggered by a motion for summary judgment, not a motion to dismiss for failure to state a claim. *Id.*

*Davis*, as cited by the defendants, is not to the contrary. There, plaintiffs relied upon a legal theory that because they offered or promised to pay a debt owed directly to defendants, and defendants allegedly refused, that the debt was extinguished. *Id.* at *2. The court held that the factual record was devoid of any indication that an actual tender of payment occurred, and that even if such tender had occurred and been refused, this would relieve only the obligations of an indorser or an accep-

tance party, not the actual debtors. *Id.* at *3. Because plaintiffs in *Davis* were the debtors, rather than indorsers or acceptance parties, even accepting their factual allegations as true, they could not prevail because their legal theory was insupportable. Similarly, the court here cannot dismiss plaintiffs' claims for civil conspiracy merely because they have not presented evidence showing the existence of a conspiracy. Rather, the court must determine that if, taking plaintiffs' allegations as true, they nonetheless cannot recover because their legal premises are flawed.

■ Defendants next argue that plaintiffs' claim fails because plaintiffs cannot successfully allege two or more actors capable of conspiring with each other. Defendants first argue that the intra-corporate immunity doctrine, which states that a corporation cannot successfully conspire with its own officers, employees, or agents, prohibits this court from finding that defendant JBC Legal Group conspired with Jack Boyajian. *See ePlus Technology, Inc., v. Aboud,* 313 F.3d 166, 169 (4th Cir.2002) ("[U]nder the intracorporate immunity doctrine, acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation."). Therefore, defendants argue, there are no two actors who could form a conspiracy.

Plaintiffs argue that defendants fall within an exception to the intra-corporate immunity doctrine. In *Greenville Publishing Co., Inc. v. Daily Reflector, Inc.,* 496 F.2d 391, 399 (4th Cir.1974), the court stated "[w]e agree with the general rule [that a corporation cannot be guilty of conspiring with its officers or agents] but think an exception may be justified when the officer has an independent personal stake in achieving the corporation's illegal objective." Plaintiffs argue that because defendant Jack Boyajian is the sole share-

holder of JBC Legal Group, he has such an independent financial stake.

Plaintiffs fail to understand the plain meaning of both "independent" and "exception." As noted by the Fourth Circuit in *Aboud,* the independent financial stake exception "has been limited, such that it applies only where a co-conspirator possesses a personal stake independent of his relationship to the corporation." *Aboud,* 313 F.3d at 179. As defendants note, and the Fourth Circuit has acknowledged, the interpretation sought by plaintiffs would cause the "exception" to swallow the general rule. *See Oksanen v. Page Memorial Hospital,* 945 F.2d 696, 705 (4th Cir.1991). This is because the employees and officers of a corporation generally have a financial stake in that corporation. Something more is required to invoke the exception to the intra-corporate conspiracy doctrine.

That something more is a financial stake in the outcome of the alleged conspiracy, separate from and independent of the financial stake in the corporation. In *Greenville Publishing,* for example, the president of the defendant corporation was held to be able to conspire with his own corporation, because he had an independent stake in another firm which competed with the plaintiff corporation. Because of this independent stake, he would reap benefits independent of his relationship with the defendant corporation if the plaintiff corporation were eliminated. *See Greenville Publishing,* 496 F.2d at 400. In *Aboud,* the defendant was engaged in a scheme to loot her own corporation and send it into bankruptcy. *See Aboud,* 313 F.3d at 180. The Fourth Circuit held that in seeking to personally profit at her corporation's expense, Aboud had a personal stake "wholly separate from her connection" with the defendant corporation. *Id.* at 179.

Plaintiffs have not alleged any financial stake on the part of defendant Boyajian independent of his relationship to defendant JBC. Instead, plaintiffs have mistakenly tried to invoke the exception because of Boyajian's financial interest in his own corporation. This is not sufficient to invoke the exception to the general rule that a corporation cannot conspire with its own officers, employees and agents. Therefore, this court holds that under the intracorporate conspiracy doctrine, defendant JBC Legal Group could not have conspired with Jack Boyajian. Therefore, the claim of civil conspiracy fails.

### C. Count IV—Plaintiff's claims for violation of RICO

In count IV of the complaint, plaintiffs allege that defendants violated the federal RICO statute, 18 U.S.C. § 1962.[2] In order to make out such a claim, plaintiffs must allege that each RICO defendant conducted an enterprise through a pattern of racketeering activity, and that plaintiffs were injured in their business or property as a result of such conduct. *Palmetto State Medical Center v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir.1997); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). "The Supreme Court has explained these injury and causation requirements as aspects of standing, rather than elements of the civil RICO plaintiff's *prima facie* case." *Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir.1988) (overruled on other grounds by *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 116 S.Ct.

1712, 135 L.Ed.2d 1(1996)). The *Brandenburg* court held "it is clear that a civil RICO complaint is vulnerable to a motion to dismiss if it fails to allege either an adequate injury to business or property, or an adequate causal nexus between that injury and the predicate acts of racketeering activity alleged." *Brandenburg*, 859 F.2d at 1187 (internal citations omitted).

■ Defendants argue that plaintiffs' claims must be dismissed because plaintiffs have suffered no injury to business or property, as is required to assert standing for a federal RICO claim. Defendants point out that plaintiffs were sent a collection letter alleging a debt. Plaintiffs disputed the timeliness of the collection effort and ordered defendants to cease all communications and collection efforts. Plaintiffs did not make any payments on the disputed debts, nor have they alleged any damage to their business or property as a result of the defendants' conduct.

Plaintiffs admit that "the Named Plaintiffs do not have grounds for any relief under the Racketeer Influenced and Corrupt Organizations Act because they suffered no injury to their business or property." Response at 17. Indeed, plaintiffs argue there is no need to dismiss the RICO claims of the Named Plaintiffs because they asserted none.

Instead, plaintiffs argue that all RICO claims were brought on behalf of the putative class. Plaintiffs have sought certification of this action as a class action pursuant to Federal Rule of Civil Procedure 23.[3]

---

**2.** Plaintiffs also requested injunctive relief in this Count. In their response to the motion to dismiss, plaintiffs contend that this request was in error and stipulate that the claim for injunctive relief should be, and hereby is, dismissed with prejudice.

**3.** The court does not rule on the motion for class certification here, because it is not yet ripe for decision. Defendants sought an ex-

tension of time to respond to the motion for certification until the instant motion to dismiss and other pending motions were resolved. Although defendants' consent motion was not granted prior to this action being reassigned to the undersigned, this court recognizes that all parties agreed to the motion and defendants would be prejudiced if the court failed to allow the extension at this point.

Plaintiffs argue that while the class representatives, the named plaintiffs, cannot meet the requirements to plead a RICO claim, the absent class members will be able to do so. Plaintiffs, who pleaded mail and wire fraud as predicate acts to show violation of RICO, cannot provide the required facts to plead fraud as against the class members with particularity, as is required. *See* Fed.R.Civ.P. 9(b); *see also Riley v. Murdock,* 828 F.Supp. 1215 (E.D.N.C.1993) (holding that a RICO claim pleading fraud must be pled with particularity). Plaintiffs cannot identify class members who have suffered the required injury to satisfy standing to bring a RICO claim. In fact, plaintiffs admit that as to the named plaintiffs, they cannot show a pattern of activity, as is also required to state a RICO claim.

The Fourth Circuit recently ruled on a similar issue in *Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248 (4th Cir.2005). In *Anderson,* plaintiff sought to advocate claims on behalf of two subclasses of plaintiffs, with whom she did not have the same interest and had not suffered the same injury. The trial court held that it could not "certify a class action in which the class representative is not part of the class and does not 'possess the same interest and suffer the same injury' as the class members." *Anderson,* 406 F.3d at 260 (quoting *East Texas Motor Freight System Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). The Fourth Circuit, citing to its prior opinions in *Cox v. Babcock & Wilcox Co.,* 471 F.2d 13 (4th Cir.1972), and *Goodman v. Schlesinger,* 584 F.2d 1325 (4th Cir.1978), affirmed that because the named plaintiff no longer had any individual claims causing her to be a member of the class she sought to represent, she was not a proper class representative. *See*

*Anderson,* 406 F.3d at 273–74. In *Anderson, Cox,* and *Goodman,* the claims of the named plaintiffs were fully adjudicated, and judgment was for the defendants. Here, the situation is even simpler, in that the named plaintiffs admit that they have not suffered the same injury, and so do not have the same interest, as the class they seek to represent.

This court does not, at present, rule upon plaintiffs' motion for certification as a class action, because that motion is not yet ripe for decision. However, because plaintiffs have failed in alleging the instant RICO claim to present a party with standing to bring the claim, or even to establish the requisites of a case or controversy as required to invoke the jurisdiction of this court, this court finds that it is appropriate to dismiss Count IV of the complaint, alleging a RICO violation, for failure to state a claim.

D. Count V—plaintiffs' claims for violation of NCRICO

The North Carolina RICO Act, although different in some respects from its federal counterpart, also requires plaintiff to allege injury to business or property in order to make out a claim. *See* N.C.G.S. § 75D–8(c). In *Kaplan v. Prolife Action League of Greensboro,* 123 N.C.App. 720, 475 S.E.2d 247, 252 (1996), the North Carolina Court of Appeals affirmed summary judgment to defendants on a NCRICO claim because plaintiffs had failed to show injury to person or property as recognized and required by the statute. The court based its decision, in part, on the fact that plaintiffs' claim "would fail under the analogous federal RICO provision, and it is apparent the General Assembly did not intend to provide NCRICO with a broader remedial stroke than its federal counter-

part." *Id.* at 254 (internal citations omitted).

Plaintiffs here have again failed to allege any injury upon the part of the named plaintiffs, choosing instead to mistakenly rely upon the claims of the absent class members. This reliance fails as it did for the federal claim, and for the same reasons. Again, the court dismisses the claim for violation of NCRICO for failure to state a claim, without ruling on plaintiffs' motion for class certification.

### E. Count VII—plaintiffs' claims for fraud

█ The elements of actual fraud[4], under North Carolina law, are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which in fact does deceive, (5) resulting in damage to the injured party. *Terry v. Terry*, 302 N.C. 77, 273 S.E.2d 674, 677 (1981). The North Carolina courts have held that "fraud, actual and constructive", is so multiform as to admit of no rules or definitions. " 'It is, indeed, a part of equity doctrine not to define it,' says Lord Hardwicke, 'lest the craft of men should find a way of committing fraud which might escape such a rule or definition.' " *Standard Oil Co. v. Hunt*, 187 N.C. 157, 121 S.E. 184, 185 (1924).

█ Despite this cautionary admonition, the Federal Rules of Civil Procedure (as well as the North Carolina Rules) require that fraud be pled with particularity. *See* Fed.R.Civ.P. 9(b)("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."); N.C.G.S. § 1A–1,

Rule 9(b)(identical to federal rule). The "circumstances" required to be pled with particularity are the "time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *See Terry*, 273 S.E.2d at 678; *see also* 5A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297 at 74 n.12.

█ Plaintiffs have again mistakenly attempted to use the mechanism of the class action pleading to overcome shortcomings in their claim. Plaintiffs argue to the collection letter sent by JBC Legal Group to plaintiffs contained misrepresentations, in that the letters claim that plaintiffs owed debts that plaintiffs allege had been paid in full, or are out of time, and hence no longer owed in the sense that they are not subject to a suit for collection, or that never existed. Plaintiffs pleaded a time, place, and content of the alleged misrepresentation, and although they cannot show the identity of the particular person making the representation, plaintiffs alleged that it came from defendant JBC Legal Group. Plaintiffs cannot show, as to the named plaintiffs, what was obtained as a result of the fraudulent acts or representations, because nothing was obtained. None of the named plaintiffs relied upon defendants' representations of the debts owed and sought to make payment. Indeed, the unifying theme of plaintiffs' claims is that each denies that any debt is owed by plaintiffs at this time.

Plaintiffs argue that the required element of damages obtained as a result of

---

4. As opposed to constructive fraud, which arises in circumstances where a confidential relationship exists between the parties. Although a claim of constructive fraud requires less adherence to the formal elements than actual fraud, no such confidential relationship exists here between the plaintiffs and defendants. Hence, this count necessarily alleges actual fraud. *See Terry,* 273 S.E.2d at 677.

the fraudulent acts or representations is satisfied by those class members who did send money to defendants in response to a collection letter such as the ones received by the named plaintiffs. *See Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir.1990) (holding it well settled under North Carolina law that "a complaint claiming fraud is fatally defective unless it alleges detrimental reliance, and damages proximately flowing from such reliance, with particularity."). Once again, however, this belief that plaintiffs are permitted to assert a claim based solely on injury to absent class members is mistaken. "Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent. Unless these petitioners can thus demonstrate the requisite case or controversy between themselves personally and respondents, 'none may seek relief on behalf of himself or any other member of the class.'" *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (quoting *O'Shea*, 414 U.S. at 494, 94 S.Ct. 669).

Plaintiffs have failed to plead the required elements of fraud with particularity, and so this count of the complaint is dismissed as to the named plaintiffs.

### F. Count VII—plaintiffs' claims for civil extortion

In their complaint, plaintiffs attempt to make out a claim for civil extortion, alleging that one or more defendants attempted to obtain property from plaintiffs by threat of economic harm and loss of reputation.

Aside from the ongoing flaw that the named plaintiffs can show no injury, defendants argue that this claim suffers from an even more basic flaw: there is no such cause of action under North Carolina law.

Defendants point to *Delk v. ArvinMeritor*, where the court clearly stated "[d]efendants correctly point out that no North Carolina court has ever recognized the tort of extortion... The Court finds that no cause of action for extortion exists under North Carolina law." *Delk*, 179 F.Supp.2d at 626. Plaintiffs, in turn, correctly point out that *Delk* is not binding upon this court.[5] Plaintiffs, in support of their argument that a cause of action for civil extortion does exist in North Carolina, point to *Hightower v. Thompson*, 231 N.C. 491, 57 S.E.2d 763 (1950).

In *Hightower*, the North Carolina Supreme Court did hold that there was a cause of action, when defendant, a bail bondsman, used the threat of arrest and imprisonment to cause plaintiff to pay him a sum greater than the amount plaintiff actually owed on his bond. *See id.* at 765. The court noted that the bondsman had the power to arrest plaintiff without process in order to ensure his appearance. *Id.* The court held, however, the fact that defendant obtained a *capias*, a writ authorizing detention, when he had the power of arrest without process, suggested that he did so for an improper purpose. *Id.* The court further held that in showing that defendant had obtained the writ and threatened him with arrest in order to obtain money, plaintiff made out a claim sufficient to withstand demurrer. *Id.* The court did not label the claim one of extortion.

---

**5.** Although the Fourth Circuit affirmed the decision of the *Delk* court dismissing all claims as to one defendant and granting summary judgment on all claims to the other defendants, the Fourth Circuit did so without opinion or argument. *See Delk v. Arvinmeritor. Inc.*, 40 Fed.Appx. 775 (4th Cir.2002). Hence it is impossible for this court to tell if the issue of the civil extortion claim was raised on appeal and considered by the court.

This court does not believe that the holding of the *Hightower* court can be fairly read as establishing a civil cause of action for extortion, particularly in light of the specific facts of that case and the lack of any statutory or case authority supporting such a cause of action in the half-century since *Hightower* was decided. This court believes it more likely that the decision in *Hightower* showed a concern with abuse of legal process, in a bail bondsman acquiring a writ of detention solely for the purpose of threatening the plaintiff with arrest and imprisonment.

Similarly, the only other case plaintiff points to in support, *Harris v. NCNB National Bank of North Carolina*, 85 N.C.App. 669, 355 S.E.2d 838, 843 (1987), dealt with the issue of the use of legal process as the basis for a claim of extortion. In *Harris*, the court defined extortion as "wrongfully obtaining anything of value from another by threat, duress, or coercion." *Id.* (citing Black's Law Dictionary at 696 (4th ed. rev.1968)). The court determined that "[a] statement of intention to file suit to enforce one's claimed legal rights is neither a threat nor the exercise of unlawful or wrongful coercion." *Id.* Plaintiffs argue that if the tort of extortion did not exist, the court would simply have said so. This court feels that the North Carolina Court of Appeals could, and did, hold that even assuming *arguendo* that such a tort existed, the plaintiffs in *Harris* could not make out such a claim. This is not sufficient support to indicate that such a cause of action exists.

■ This court agrees with the District Court for the Western District of North Carolina that a survey of the applicable North Carolina authority indicates that no civil cause of action exists for the tort of extortion. Accordingly, plaintiffs' claims under count VII of the complaint are dismissed with prejudice.

### G. Defendants' motion to dismiss for improper venue

Defendants move to dismiss the claims of plaintiffs Walker, Frost, Lambe, Caldwell and Nisley for improper venue. Defendants argue that pursuant to the general venue statute, 28 U.S.C. § 1391, venue would be proper in the Eastern District of North Carolina only if "a substantial portion of the events giving rise to the claim occurred" here. *See* 28 U.S.C. § 1391(b)(2). These plaintiffs do not reside in the Eastern District of North Carolina. Plaintiffs Walker and Lambe are both domiciled in South Carolina. Plaintiff Frost is domiciled in Utah. Plaintiff Caldwell is domiciled in Indiana. Plaintiff Nisley is domiciled in Colorado. At all times relevant to this suit, plaintiffs were residents of these respective states, and all activity giving rise to these causes of action occurred in these respective states. No defendants reside in North Carolina, and no collection activity directed at these non-North Carolina resident plaintiffs originated from or was directed to North Carolina. Therefore, defendants argue, pursuant to § 1391, venue is proper in the Eastern District of North Carolina only as to the claims of plaintiffs Godfredson, McNeil, Juliano, and Strand, who are residents of North Carolina and whose claims arose in the Eastern District of North Carolina.

■ Although defendants' reasoning is unassailable, their argument nonetheless suffers from a fatal flaw: 28 U.S.C. § 1391 does not apply when, as here, defendants remove a case to federal court from state court. *See Polizzi*, 345 U.S. at 665, 73 S.Ct. 900 ("[O]n the question of venue, § 1391 has no application to this case because it is a removed action.") Venue for a removed action is fixed, instead, by the removal statute, 28 U.S.C. § 1441(a), which limits venue to "the district court of

the United States for the district and division embracing the place where such action is pending." *See id.*; 28 U.S.C. § 1441(a). Because § 1441(a) only allows one possible venue for removal, "once a case is properly removed to federal court, a defendant cannot move to dismiss on § 1391 venue grounds." *Hollis v. Florida State University*, 259 F.3d 1295, 1299. This is true "even if venue would be improper under state law when the action was originally filed." *See Three M*, 368 F.Supp.2d at 455 (citing *Hollis*, 259 F.3d at 1300). This case was originally filed in Cumberland County Superior Court, and defendants properly removed to this court. Defendants cannot move to dismiss the non-resident plaintiffs' claims on the basis of § 1391 venue grounds.

The *Hollis* court noted that a defendant in a removed action, if it believes that the case can be better litigated or tried in another court, has the option of seeking transfer pursuant to 28 U.S.C. § 1404(a). *See Hollis*, 259 F.3d at 1300. Under that statute, a court may, "[f]or the convenience of parties and witnesses, in the interest of justice," transfer any civil action to any other district court where the action might originally have been brought. This court has not received a motion under § 1404(a), but notes that such a motion would likely be unavailing. Any convenience to the defendants and defense witnesses is offset by the fact that the claims of the North Carolina plaintiffs would remain in this court to be litigated. As to any convenience to the non-North Carolina plaintiffs, they have chosen this forum and this court will not gainsay their choice. Defendants' motion to dismiss the claims of the non-North Carolina resident plaintiffs on the basis of improper venue is denied.

### H. Defendants' motion to strike portions of the complaint

Defendants move the undersigned to strike paragraphs 12–66 and 90–97 of the complaint, pursuant to Fed.R.Civ.P. 12(f), which gives the court the discretion to strike from the pleadings any "redundant, immaterial, impertinent, or scandalous matter." Defendants further note that Fed.R.Civ.P. 8(a) requires plaintiffs to set forth a "short and plain" statement of their claims, and that Rule 8(c) further requires that "[e]ach averment of a pleading shall be simple, concise, and direct." The undersigned agrees that this complaint thoroughly and completely fails to meet the requirements set forth in Rule 8. The undersigned further agrees that much, if not all, of the material complained of falls within the categories set forth in Rule 12(f).

The undersigned also notes, however, that motions to strike pursuant to Rule 12(f) are disfavored in this circuit as being a drastic remedy. *See Waste Management*, 252 F.3d at 347. While this court in no way believes that the instant motion is advanced as a dilatory tactic, *see id.*, the undersigned notes that a showing of prejudice to the moving party has often been required before a 12(f) motion to strike can be granted. *See Tivoli*, 80 F.Supp. at 803 ("Motions to strike are rather strictly considered and have often been denied even when literally within the provisions of Rule 12(f) where there is no showing of prejudicial harm to the moving party."); *Simaan Inc.*, 2005 WL 1166610 at *6 ("[A] motion to strike on the basis of irrelevancy should only be granted when it is clear that the material in question can have no possible bearing upon the subject matter of the litigation and the material may prejudice the other party.")

This court finds that the showing of actual prejudice to the defendants has not been made. Although the material in the complaint is largely immaterial, imper-

tinent, and scandalous, it will not be presented to the jury, and the court assures defendants that material which is irrelevant to plaintiffs' cause of action will not be considered by the court. Therefore, the danger of prejudice is minimized. Given the disfavored nature of motions to strike pursuant to Rule 12(f), the undersigned chooses to allow the protested material to stand.

This court notes that very recently, in another case involving these same defendants, the undersigned granted the same motion to strike in part, as it pertained to accusations that the defendants had engaged in criminal activity. *See Culver v. JBC Legal Group,* 5:04–CV–389, Order of June 28, 2005 (DE # 39). However, in that case, the implied criminal activity concerned fraud, extortion, and racketeering. Despite these allegations, plaintiffs did not, in *Culver,* bring claims for civil fraud, civil extortion, RICO or NCRICO. Therefore, the allegations of criminal behavior had utterly no relevance to the causes of action at issue, and the undersigned found it appropriate to strike portions of the complained-of material. *See Anheuser–Busch, Inc., v. Cohen,* 37 F.2d 393, 395 (D.Md. 1930) (noting "[i]f the plaintiff is in fact violating the criminal law, he can be punished in the proper forum. Unless and until such violation is established, the question is not properly to be considered in a proceeding of this kind.").

Here, plaintiffs have brought the claims that were not raised in *Culver.* Although the court has determined that those claims cannot be sustained by the named plaintiffs, the complained-of material in this complaint still has the minimal relevance that was lacking in *Culver.* Therefore, taking into consideration the disfavored nature of motions to strike pursuant to Rule 12(f), and the minimal prejudice to defendants of retaining the material, this court denies defendants' motion to strike.

## CONCLUSION

Given the number of claims affected by this motion, the alternate bases for dismissal, and the motion to dismiss for lack of personal jurisdiction, the court deems it appropriate to summarize the status of the case at this point.

As held by this court's order on the motion to dismiss for lack of personal jurisdiction, defendants Marv Brandon and Wayne Franklin have been dismissed from this action.

As to Count I of the complaint, alleging violation of FDCPA, no motion to dismiss has been made and the claim continues against defendants JBC Legal Group and Jack Boyajian.

As to Count II of the complaint, alleging violation of NCUDTPA and NCDCA, the motion to dismiss is GRANTED, and this claim is DISMISSED WITH PREJUDICE against defendants JBC Legal Group and Jack Boyajian.

As to Count III of the complaint, alleging civil conspiracy, the motion to dismiss is GRANTED and the claim is DISMISSED WITH PREJUDICE as to defendants JBC Legal Group and Jack Boyajian.

As to Count IV, V, and VI of the complaint, alleging violation of RICO, NCRICO, and civil fraud, the motion to dismiss is GRANTED and the claims are DISMISSED WITHOUT PREJUDICE as to defendants JBC Legal Group and Jack Boyajian.

As to count VII of the complaint, alleging civil extortion, the motion to dismiss is GRANTED and the claim is DISMISSED WITH PREJUDICE as to defendants JBC Legal Group and Jack Boyajian.

Defendants' motion to dismiss all claims for improper venue as to the non-North Carolina resident plaintiffs (Benjamin Walker, Gary Frost, Shawn Lambe, Clinton Caldwell, and Holley Nisley) is DENIED.

Defendant's motion to strike paragraphs 21–77 and 183–190 of the complaint is DENIED.

This motion to dismiss now having been resolved, defendants are DIRECTED to file their response to plaintiffs' motion for class certification as to counts I, IV, V, and VI of the complaint. Defendants are given 20 days from the date of this order to submit their response. Plaintiffs will then be given 10 days to submit a reply. After resolution of the motion for class certification, the court will issue a case management order setting any remaining claims on the calendar for discovery and trial.